# THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENT, *v.* PARSONS DE KROYFT, APPELLANT.

*Comparison of signatures — when a witness may sign her name in court and such signature may be put in evidence — chap. 36 of 1880 — application thereof to such a case.*

In the prosecution of the defendant for the forgery of an instrument, to which it was alleged that he had signed the name of Jacob Vogt, and to which the name of Mary Vogt was also signed, it was claimed by the defendant, and also by Mary Vogt, on their examination as witnesses on the trial, that the defendant had signed the name of Mary Vogt, and that the name of Jacob Vogt had been signed thereto by Mary Vogt and not by the defendant.

While Mary Vogt was being cross-examined by the district attorney, one of the jurors, with the consent of the court, asked her to write her own and her husband's name on a slip of paper, which she did, and the signatures were, under the objection of the defendant, put in evidence for the purpose of testing the signatures by comparison.

*Held*, that the evidence was competent under the common-law rules for the purpose of testing the veracity of the witness.

That the district attorney, by offering the signatures in evidence, made the interrogatories propounded by the juror and the signatures written by the witness a part of his cross-examination, and that the correctness of the ruling might be properly challenged by the defendant.

That the objections existing to the admission of such evidence — first, the danger of fraud in the selection of the writings offered as specimens for the occasion ; second, that if admitted the genuineness of these specimens might be contested and others introduced to the infinite multiplicity of the collateral issues and to the subversion of justice; third, the danger of surprise to the other party unaware of the documents to be thus produced — neither of them were applicable to this case.

*Semble*, that the rule, as stated, does not permit a party, the genuineness of whose signature is in dispute, to write his name in the presence of the court and jury and then give it in evidence in his own behalf for the jury to institute a comparison between it and the one in question.

*Quære*, whether chapter 36 of the Laws of 1880 is broad enough to authorize the introduction of evidence such as that received in this case.

APPEAL from a judgment of the Monroe County Court of Sessions entered upon a verdict convicting the defendant of the crime of forgery in the second degree, and from an order of the same court denying the defendant's motion for a new trial.

The indictment contained two counts. In the first the defendant is charged with forging and counterfeiting an instrument in writing, of which the following is a copy :

" $25.                              " ROCHESTER, N. Y., *Jan.* 19, 1887.

" Three months after date we promise to pay to the order of Raleigh Farrar, twenty-five dollars, at the Union Bank. Value received, with interest.

(Signed)          " JACOB VOGT,

" MRS. MARY VOGT."

In the second count he is charged with uttering and publishing as true the same instrument. In each count the charge is that the act was done with a view to cheat and defraud Jacob Vogt and Raleigh Farrar and the Union Bank. The people's evidence tended to prove that the defendant and Mary Vogt applied to the payee of the note for the loan of twenty-five dollars, for the repayment of which they offered to secure him by a chattel mortgage on certain household goods owned by Jacob Vogt; that Farrar declined to loan the money on his account, but offered to indorse a note for their accommodation and procure its discount by the Union Bank, and to take from them a mortgage securing him against his liability as indorser. This arrangement was assented to by the defendant and Mrs. Vogt. The note set forth in the indictment was prepared, and the people's evidence tended to prove that the defendant signed thereto the name of Jacob Vogt, and that Mrs. Vogt placed her own name thereto in the presence of the defendant. The chattel mortgage was executed and delivered, the note discounted and the avails paid to Mrs. Vogt. A receipt was executed acknowledging the payment of the proceeds (twenty-four dollars and seventy-five cents), to which the defendant wrote the name of Jacob Vogt, and the same was also signed by Mrs. Mary Vogt. During the negotiations the defendant personated Jacob Vogt, who was the husband of Mary Vogt. The defendant was sentenced to be confined in the Auburn State prison for the period of five years.

*W. Henry Davis*, for the appellant.

*George A. Benton*, district attorney, for the respondent.

BARKER, P. J.:

The people's evidence satisfactorily established that the defendant, without authority, signed the name of Jacob Vogt to the note set forth in the indictment, and procured the payee named therein

to indorse the same, and at the same time represented himself to be Jacob Vogt. The evidence in support of the second count of the indictment is no less convincing, and sustains all the charges therein set forth. Most of the exceptions upon which the defendant relies for the purpose of securing a reversal of the judgment were taken to the rulings of the trial court in receiving evidence to which he objected as incompetent and irrelevant. No claim is made by the defendant that the signature of Jacob Vogt to the note was genuine, or that he was authorized to execute the same in his name and behalf. He attempts to meet the charge by denying that he wrote the name of Jacob Vogt to the note, and claims that the same was written by Mrs. Mary Vogt, and that he at the same time signed the name of Mary Vogt to the instrument, with her consent and approval. This was the only question of fact seriously in dispute upon the trial. The defendant and Mrs. Mary Vogt were both witnesses, and testified that the note was executed in that way and manner. While Mrs. Vogt was being cross-examined by the district attorney, one of the jurors, with the consent of the court, asked her to write her own and her husband's name on a slip of paper, which she did. The defendant's counsel objected to the signatures being put in evidence for the purpose of testing the signatures by comparison, which was overruled and the signatures were received, and the defendant objected. We think the evidence was competent, under the common-law rules, for the purpose of testing the veracity of the witness. The district attorney, by offering the signatures in evidence, made the interrogatories propounded by the juror and the signatures written by the witness a part of his cross-examination, and the correctness of the ruling may be properly challenged by the defendant.

The defendant's counsel attempts to sustain his objection and exception by the rule of evidence adopted and in force in this State prior to the enactment of chapter 36 of the Laws of 1880, that when the genuineness of a signature to an instrument is in dispute, other signatures cannot be given in evidence which are genuine to enable the jury to compare the same with the one in dispute, and that no documents can be used for the purpose of making a comparison, except such as have already been put in evidence for other

legitimate purposes.    Two reasons have been assigned for the support of the rule mentioned, viz : First.  The danger of fraud in the selection of the writings offered as specimens for the occasion. Second.  That, if admitted, the genuineness of these specimens may be contested and others successively introduced, to the infinite multiplication of collateral issues and the subversion of justice. To which Mr. Greenleaf, in his work on Evidence, added another, to wit ; The danger of surprise upon the other party who may not know what documents are to be produced and, therefore, may not be prepared to meet the inferences drawn from them.  (*Van Wyck* v. *Mc Intosh*, 14 N. Y., 439 ; *Doe* v. *Newton*, 5 A. & E., 514 ; 1 Greenl. Ev., § 580.)   But these objections do not apply, and the rule is not applicable where the signature offered in evidence was written in the presence of the court and jury by the person whose signature is in dispute as in this case.   The issue to which the evidence related was, whether the witness, Mary Vogt, or the defendant wrote the name of Jacob Vogt to the instrument set forth in the indictment.   The witness was called by the defendant to prove that he did not and that she did write the name of Jacob Vogt to the note, and also that the defendant did and that she did not sign her own name thereto.   If the district attorney was willing to take the risk of such evidence, the defendant cannot complain that this method was adopted for the purpose of testing the truthfulness of the defendant's own witness.

There is authority to be found in the decisions of this and other States in support of the argument that the signatures made by the witness during her cross-examination in the presence of the court and jury was competent evidence on the question of the witness' veracity.   In *Bronner* v. *Loomis* (14 Hun, 341), the action was on a promissory note claimed by the plaintiff to have been made by the defendant, who interposed the defense that her signature thereto was a forgery.   The defendant was examined as a witness in her own behalf, and on her cross-examination she, at the request of the plaintiff, wrote her name on a slip of paper which was received in evidence on the plaintiff's offer and over the defendant's objection, and it was held to be competent evidence.   In that case, as in this, the inquiry was, whether the signature in question was or was not that of the witness who had testified on the direct examination that.

it was not. In *Chandler* v. *Le Barron* (45 Me., 534), it was held that a writing made in the presence of a court and jury by the party whose signature is in dispute, may be submitted to the jury for the purpose of comparison. In the case of *Doe* v. *Wilson* (10 Moore Priv. Council Cases, 202), that tribunal in its opinion said : " Their lordships have no doubt that, if on a trial in *nisi prius*, a witness had denied his signature to a document produced in evidence and, upon being desired to write his name had done so in open court, such writing might be treated as evidence in the case and be submitted to the jury, who might compare it with the alleged signature to the document."

We think the court below committed no error in allowing the signatures to be introduced in evidence under the circumstance of this case. We may properly add, in this connection, that the rule, as stated, does not permit a party, the genuineness of whose signature is in dispute, to write his name in the presence of the court and jury and then give it in evidence in his own behalf for the jury to institute a comparison between it and the one in question. The party so situated would be under a great temptation to produce a signature in appearance altogether dissimilar to the one sought to be sustained by the adverse party as genuine. (*King* v. *Donahue*, 110 Mass., 155.) The district attorney, in his argument in support of the competency of the evidence objected to, contends that, by the provisions of chapter 36, Laws of 1880, the evidence was made competent, even if the same was not by the common-law rule which previously prevailed in this State. It may be that the act referred to is broad enough in its provisions to make the evidence competent, but we prefer to place our decision on the ground already stated.

The note produced and given in evidence on the trial corresponded with the note set out in the indictment. When produced, the signatures of Mrs. Mary Vogt and the indorser, Raleigh Farrar, the payee, were both erased, but the evidence fairly shows that the erasures took place after the note was paid to the bank by the indorser, and that the signatures can now be read under the erasure marks. There was no error in receiving the note in evidence, over the objection made by the defendant that it did not correspond with the instrument set out in the indictment.

The district attorney was allowed to prove that the defendant

signed the name of Jacob Vogt to the chattel mortgage. It was competent for the people to prove that fact. It was a part of the business that was transacted at the time the note was made and put in circulation, and was clearly competent, although it proved that the defendant had committed another offense of the same nature at the same time. The evidence was relevant and material for the purpose of proving the offense charged in the indictment. (*Hope* v. *The People*, 83 N. Y., 418.)

We have examined the whole record with care and fail to discover any error. The evidence is very convincing in its character and leaves no doubt in our minds as to the guilt of the defendant, and the judgment and the order should be affirmed.

HAIGHT, BRADLEY and DWIGHT, JJ., concurred.

Judgment affirmed and proceedings remitted to the Court of Sessions of Monroe county to proceed thereon.