JOHN SULLIVAN v. IVA STARKEY.

1. WITNESS DENYING AUTHENTICITY OF WRITING BY HIM MAY BE COMPELLED TO WRITE SPECIMENS OF HIS HANDWRITING ON CROSS-EXAMINATION, THOUGH NOT ON DIRECT EXAMINATION.

When a witness has denied the authenticity of a document, purporting to have been written and signed by him, containing statements material to the issue in the case, he may be required on cross-examination to write specimens of his handwriting for the purpose of comparison. But this rule does not apply to the direct examination of the witness.

2. WRITING DENIED BY PARTY MAY BE OFFERED TO IMPEACH PURPORTED WRITER AND AS DECLARATION AGAINST INTEREST.

In such a case where testimony has been given by another that the document is in the handwriting of the party, it may be offered for the purpose of impeachment; and if the witness be a party, for the additional reason that it is a declaration against interest.

[Syllabus by the court.]

ERROR to common pleas court.

*Barton Walters,* for plaintiff in error.

*Geo. W. Lindsay* and *Irvine F. Snyder,* for defendant in error.

Pickaway County.

**JONES, C. J.**

This action arose on a complaint in bastardy filed by Iva Starkey against John Sullivan. The case was tried in the common pleas court, before the court and jury, and the defendant was found to be the reputed father of the child. A motion for a new trial was filed and overruled, a judgment entered upon the verdict, and a bill of exceptions taken. The petition in error in this court alleges: That there is error in the rejection of certain testimony, and in the refusal to give special charge No. 10, asked to be given by the defendant below.

Iva Starkey, the complainant, took the witness stand in her own behalf and testified, as shown by the bill, when a certain letter was shown to her, that this letter was written by a friend of hers; that she did not dictate it, and knew but very little of its contents; that she didn't direct that it be sent to John Sullivan, the defendant below, and that she did not know it was being sent. She, however, did state that she knew some of the things contained in the letter. This letter was claimed by the defendant to have been written by the prosecuting witness, and it purports to be signed by her initials. This letter, as shown by the bill of exceptions, was inclosed in an envelope and directed to the defendant at his address in the city of Circleville, and purports to have been written during the time of her pregnancy. The letter, among other things, contained this statement:

"Don't worry about what we talking about Sunday night, for it don't belong to you. I would not lay it on you if it was yours."

It appears from the record, after the direct examination of the complaining witness had been completed, this letter being in the possession of counsel for the defendant and exhibited to the witness, he asked the witness as follows:

"I wish you would take that sheet of paper and pencil, and write what I dictate to you."

"Thereupon counsel for the defendant presented a sheet of paper and pencil to the witness, and requested that she, in the presence of the jury, write out a copy of the letter above offered in evidence, for the purpose of enabling the jury to say

Sullivan v. Starkey.

upon the comparison of the handwriting whether or not the letter in question was written by the plaintiff.''

The court refused this request by counsel for the defendant, and an exception was taken to the refusal of the court.

In Ohio this is a new question, and has never been passed upon in any case reported so far as we know. It is unquestionably the rule as shown by the great weight of authority, that the claimed author of disputed handwriting can not exhibit, for the purpose of comparison, any writing made by him after the controversy arose. This rule has been amplified and extended in proper cases, that signatures and writing after the controversy arose may be offered in certain cases; that is, where it appears that the signatures and handwriting were not manufactured, and had been used in the ordinary course of business, and could not have any connection with the disputed point. However that may be, it has never been held in any case we can find, that upon the direct examination of the party, or a witness in the case, he may be asked, in support of his declaration, that the disputed writing is not authentic, to write out his signature or a portion of the disputed document for the purpose of comparison. That can not be asked, I say, upon the direct examination of a witness, for the reason, as the courts say, that a signature, or handwriting, could at the time, upon the trial, and during the examination in chief, be so disguised as to prevent a proper standard of comparison to be made. And furthermore, the witness himself might have in his mind the idea of procuring at the trial such handwriting or signatures as would be self-serving in its nature, especially if he would be a party. But an examination of authorities cited, carefully and discriminately, will show that there is quite a difference whether this question is asked in chief or upon cross-examination. The opposite party, of course, may take the risk of the fact that the witness will disguise his handwriting. But the rule is, that upon the cross-examination of a witness, upon a point that is material to the issues in the case and upon a point which he has orally denied, the document may be displayed to the witness and he may be required to write in open court for the purpose of making a

standard of comparison for any disputed document, and he may be required to furnish specimens of his handwriting therefor.

One of the cases frequently referred to and cited in the other cases, is the case of *Huff* v. *Nims,* 11 Neb. 363. [9 N. E. Rep. 548]. There it was said by the judge:

"The only point relied on worthy of attention is the alleged error in requiring the witness Huff to write certain words in the presence of the jury, and for their inspection and comparison with the same words contained in the note on which the action was brought.

In view of the testimony the handwriting of the witness was an important factor in the case, and it was certainly competent to disprove his oral statement as to the words of the note then before the jury. This could be done in various ways; one of which was by a comparison of the writing of the note with other writing, either admitted or proven to be his own. That written in the presence of the court and jury was certainly his own, and ought to have been acceptable to the witness and the party calling him. If not dissembled, and of the possibility of this the party conducting the cross-examination took the risk, the writing thus exhibited enabled the jury to form a pretty accurate estimate of the value of the witness' oral testimony on this point."

To the same effect is the case of *Bradford* v. *People,* 22 Colo. 157 [43 Pac. Rep. 1013], where the court held that where the accused comes on the stand as a witness in his own behalf and denies writing the document alleged to have been written by him, he may be required on cross-examination to write in the presence of the jury for the purpose of comparison.

The case of *Sanderson* v. *Osgood,* 52 Vt. 309, was a bastardy case in which evidence of this character had been offered and admitted and where the complaining witness had written in open court a portion of the disputed writing. Judge Ross in the decision of that case closes the opinion with the following language:

"The utmost limit to which the cases and practice go in this respect, is to allow the opposite party, when the upholding

Sullivan v. Starkey.

party takes the stand as a witness, in cross-examination to call upon him to write in the presence of the jury, that he may use such specimens of his writings for comparison with the disputed writing, by the jury, and experts against him.''

Another case frequently referred to in these cases is the case of *King* v. *Donahue,* 110 Mass. 155 [14 Am. Rep. 589], where the court say:

''A party to an action is not entitled to write his signature in the presence of the jury for the purpose of being compared with a signature purporting to be his, the genuineness of which he denies. There are cases to the effect that where a witness has denied his signature to a document he may be called upon in cross-examination to write in open court that the jury may compare such writing with the controverted signature, but this is merely as a part of the cross-examination and for the purpose of contradicting the witness.''

In the case of *People* v. *DeKroyft,* 49 Hun. 71 [1 N. Y. Supp. 692], it was held that:

''On a trial for forgery, where the defendant introduced one of the parties whose name was signed to the note as a witness to show that she wrote the name alleged to have been forged, and that defendant wrote her name by her authority, she may be required on cross-examination to write her own name and that alleged to have been forged, and the signatures may be submitted to the jury for comparison as a test of her veracity.''

This is also supported by the case of *Chandler* v. *LeBarron,* 45 Me. 534. And to the same effect is the case of *Doe* v. *Wilson,* 10 Moore, P. C. 502, 530.

While in some of these cases the handwriting of the witness was obtained in open court, either on the direct examination without objection or upon the cross-examination, the rule of practice is distinguished in the opinions.

In the case of *Hickory* v. *United States,* 151 U. S. 376 [14 Sup. Ct. Rep. 334; 38 L. Ed. 170], Chief Justice Fuller recognizes the distinction wherein a witness in a case of this kind upon examination in chief may not be asked to write in support of his declaration in open court, but the rule is that upon

Pickaway County.

cross-examination by the other side he may be required to do so.

We think that the court erred in refusing to permit the witness on her cross-examination to write a portion of the letter that was claimed to have been written by her, and signed by what purported to have been her initials.

On pages 15 and 16 of the record, after she testified that she knew some of the things that were in this letter, she was asked this question:

"Now, I wish you would tell us so that I can get it in the record, what parts of that letter you are acquainted with?"

The court refused to permit her to answer that question. On the next page of the record, after testifying that she knew it was being written but did not know what was in it with the exception of a few things, she was asked the question:

"Will you tell us what statements were in that letter that you did not know were in there before it was mailed?"

The court refused to allow that question to be answered and an exception was taken by the defendant to the refusal of the court to allow the questions to be answered in both instances. Here was a witness who knew that this letter was being written to Sullivan, and knew some of the contents of the letter; yet, in spite of the admissions made by the witness on the stand, she was not permitted to testify what things were contained in the letter that she knew; and one of the statements in the letter is the statement referred to in the first part of the opinion, viz.:

"Don't worry about what we were talking about Sunday night, for it don't belong to you. I would not lay it on you if it was yours."

We think the court erred in refusing to permit the witness to answer as to the contents of that letter. We think, also, that the court erred in not admitting the letter itself in evidence upon the case made out by the defendant.

The defendant introduced one witness by the name of Love McKinley, who testified that the writing in the letter was the handwriting of the complainant, that she knew it; in some portions of the testimony she makes it positive, but upon cross-

examination her credibility is questioned seriously; but all this is a matter of fact for the jury; and having made a *prima facie* case by testifying to the fact that this handwriting was the handwriting of the complaining witness, this letter should have been admitted by the court, because of the *prima facie* case made by the testimony of the witness, Mrs. McKinley.

This is supported by the opinion in the case of *Schriedly* v. *State*, 23 Ohio St. 130. The fifth proposition of the syllabus is as follows:

"Where, upon such trial, a witness testified in behalf of the state that the goods were received and bought of him by the defendant, knowing that they were stolen; and, on cross-examination, he denied that he had any knowledge whatever of a letter, shown to him, purporting to be written by him to the defendant, stating that he knew nothing against the accused relating to the transaction: Held, that, for the purpose of impeaching the witness, the letter might be given in evidence by the defendant, on making *prima facie* proof that it was written at the dictation of the witness, and was in fact sent by him to the defendant."

This case is a little stronger than the case at bar, but it is in principle the same. So is also the case of *Pennsylvania Fire Ins. Co.* v. *Carnahan*, 10 Circ. Dec. 225 (19 R. 98). The fifth proposition of the syllabus is as follows:

"Where a witness on cross-examination is shown a paper with his name signed thereto, which is at variance with his testimony in chief, but denies to have signed it, it is competent to introduce witnesses to testify that he did sign it, and such writing may be admitted in evidence."

That was exactly the course sought to be taken in this case. As to whether or not she signed it, that was a question for the jury; but the defendant sought to introduce this letter as a declaration against self-interest and also for the purpose of impeaching the credibility of the complaining witness.

Special Instruction No. 10, which was refused by the court, is as follows:

"The plaintiff alleges that she became pregnant by the defendant on August 22, 1909; now, I charge you that she

must establish, by a preponderance of the evidence, that she became pregnant at that time; and you can not return a verdict against the defendant if you are in doubt as to when she became pregnant or in the event you believe that she became pregnant at some other time.''

The trouble with that charge is, it attempts to bind the plaintiff on a question in controversy: the pregnancy of the complainant to beginning on the date of August 22, 1909. The plaintiff was not, and could not, be bound by that exact date. There is no error on the part of the court in refusing to give this charge.

We think, because of the errors named, that the judgment of the court below should be reversed and the cause remanded to that court for a new trial.

**Walters** and **Sayre, JJ.**, concur.