JOHN HOPE, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

The sufficiency of the evidence upon which a grand jury finds an indictment is not a question which can be raised by plea to the indictment.

It is not a proper plea, therefore, to an indictment that the grand jury received incompetent and irrelevant evidence, to wit: the *ex parte* affidavits taken before the committing magistrate.

*It seems* that allegations that a grand jury received and considered such affidavits would not be sufficient to sustain a motion to quash the indictment, in the absence of averments or proof that the affidavits were the only evidence, or that some fact material to the case of the prosecution was established thereby, or that the witnesses by whom the affidavits were made were not also personally examined, or that the indictment was not based upon sufficient competent evidence.

Where an indictment contains several counts, some of which are good, the fact that some of the counts are bad does not make a conviction erroneous where the verdict is general.

Upon the trial of an indictment for robbery in the first degree, the property taken being charged to be one key of the value of one dollar, evidence on the part of the prosecution was to the effect that certain persons, one of whom was the prisoner, entered the room of W., who was janitor of a bank, masked, while he was in bed; that they suffocated and handcuffed him, and by putting a pistol to his head compelled him to disclose the combination of the lock of the bank safe, and put him into such a state of terror as to be incapable of resistance; that they then took and carried away the bank keys from a table in his presence, one of them being the key of the street door, and subsequently entered and robbed the bank. There was no evidence of any intention to return the keys, or that the street door key was ever recovered. *Held*, that the evidence justified the jury in finding a felonious taking of the key from W. against his will and in his presence by violence to his person and by putting him in fear of immediate personal injury, and that such a finding established robbery in the first degree (2 R. S. 677, § 55); that the intent with which they took the key was a question of fact for the jury, and if they found that the robbers took it with intent to appropriate it, the use subsequently made of the key although in the minds of the robbers at the time of the taking could not affect the question of their guilt; and that it was immaterial whether the robbers formed the plan of taking the key before they entered the room or whether it was an after-thought suggested by seeing it on the table.

Also, *held*, that evidence of the burglary committed at the bank was admissible for the purpose of showing that it was committed by the same party who committed the robbery, and by connecting the prisoner with the burglary to connect him with the robbery.

Upon the trial of an indictment evidence of the commission of another crime by the prisoner is competent where it is relevant and material on the question of the guilt of the prisoner of the crime for which he is on trial.

Also, *held*, that evidence was competent of the complicity of the prisoner in a prior scheme to enter and rob the bank.

(Argued December 18, 1880; decided January 18, 1881.)

ERROR to the General Term of the Supreme Court in the first judicial department, to review judgment entered upon an order made December 30, 1879, affirming a judgment, entered upon a verdict, convicting the plaintiff in error of the crime of robbery in the first degree.

The indictment contained four counts, each charging the

plaintiff in error with feloniously assaulting one Louis Werckle and robbing and taking from him " one key of the value of one dollar." The first count charged the taking to have been " from the person of said Louis Werckle and against the will and by violence to the person." The second count charged the taking to have been " in the presence of the said Louis Werckle against the will * * * and by putting the said Louis Werckle in fear of some immediate injury to the person. The third count charged was similar to the first, but averred that the key was the " personal property of the Manhattan Savings Institution." The fourth was similar to the second, with the averment of ownership contained in the third. The facts are sufficiently set forth in the opinion.

*Charles W. Brooke* for plaintiff in error. There was not sufficient proof that there was a felonious taking of the property charged in the indictment. (3 R. S. [6th ed.], § 69; *State v. Trexler*, 2 Car. L. R. 90; *R. v. Macauley*, 1 Leach, 287; *R. v. Baker*, id. 299; *R. v. Steward*, 2 East's P. C. 702; *R. v. Walls*, 2 C. & K. 214; *R. v. Grosel*, 1 C. & P. 304; *R. v. McDaniel*, Foster, 121–128; *Lang v. State*, 12 Ga. 293; 2 East's P. C. 662; Roscoe's Cr. Ev. 894; *R. v. Cunup*, 1 C. & P. 658; *R. v. Cabbage*, R. & R. 292; *State v. Cornell*, 1 Tenn. 305; *Comm. v. Leach*, 1 Mass. 59; *People v. Smith*, 5 Cowen, 218; *State v. Wheeler*, 3 Vt. 344.) The court erred in admitting evidence of the burglary as *res gestœ*, it having occurred subsequent to the robbery charged in the indictment. (*People v. Hopson*, 1 Denio, 575; *Bottomly v. U.S.*, 1 Story, 105; 2 Russ. on Crimes, 777; *R. v. Roebuck*, 36 Eng. L. & Eq. 631; 1 Greenl. on Ev., § 53; *Dunn v. State*, 2 Pike, 229; *People v. Wood*, 3 Park. 681; *Nutting v. Sage*, 4 Grave. 584; *State v. Griffis*, 3 Ired. 404; 1 Arch. Cr. Pr. & Pl. 392; *R. v. Dossett*, 2 C. & K. 306; *R. v. Voke*, R. & R. 531; *Comm. v. Wilson*, 2 Cush. 590; *Brock v. State*, 26 Ala. 104; *Thorp v. State*, 15 id. 749; *Comm. v. Call*, 21 Pick. 515; *Farrar v. State*, 2 Ohio [N. S.], 54; *Stone v. State*, 4 Humph. 27; 1 Phil. on Ev. 178 [2d ed.]; *R. v. Vandercomb*, 2 Leach's Cr. C. 816; *U. S. v. Mitchell*, 2 Dall. 357; *Rex v. Westwood*, 4 C.

& P. 547; *Tuttle* v. *People*, 36 N. Y. 431; 1 Phil. on Ev.
169, § 3.)   In cases of conspiracy, when once the conspiracy or
combination is established, the act or declaration of one con-
spirator or accomplice in the prosecution of the enterprise is
considered the act or declaration of all, and is evidence against
all.   (*U. S.* v. *Harman*, 1 Bald. 292; *Martin* v. *Comm.*, 11
Leigh, 745; *U. S.* v. *Goodwin*, 12 Wheat. 469; *Waterbury*
v. *Sturtevant*, 18 Wend. 353; 1 East's P. C., chap. 2, § 37, p. 96;
2 Stark. Ev. 326.)   When the common enterprise is at an end,
whether by accomplishment or abandonment, no one is per-
mitted by any subsequent act or declaration of his own to affect
the others.   (1 Phil. & Am. on Ev. 215, n. 4; 1 Greenl. on
Ev., § 3; *U. S.* v. *White*, 5 Cranch's C. C. 38; *R.* v. *Turner*,
1 Mood. Cr. Cas. 347; *R.* v. *Appleby*, 3 Stark. 33; *Melen*
v. *Andrews*, 1 M. & W. 336; *Hunter* v. *Comm.*, 7 Gratt. 641;
*State* v. *Poll*, 1 Hawks, 442; *State* v. *Hanney*, 2 Dev. & Bat.
390; *Kirby* v. *State*, 7 Yerger, 259; *Morrison* v. *State*, 5
Ohio, 439; *Lowe* v. *Botteler*, 4 Har. & McHen. 349; *R.* v. *Salter*,
5 Esp. 125; *R.* v. *Roberts*, 1 Campb. 399.)

*Daniel G. Rollins* for defendant in error.   If there were
misconduct in the grand jury, the plaintiff's remedy was by
motion to quash, not by a plea in abatement.   (*People* v. *Hul-
but*, 4 Denio, 133; *State* v. *Boyd*, 2 Hill [S. Car.], 288; *U.
S.* v. *Reed*, 2 Blatchf. 435; *Turk* v. *State*, 7 Ohio, 240; *State*
v. *Dayton*, 3 Zabr. 49; *Spratt* v. *State*, 8 Mo. 247; *Rex* v.
*Dickinson*, Russ. & Ry. 401; *Reg.* v. *Russell*, Car. & M. 247.)
There was evidence to support a finding of a felonious taking of
the key.   (3 R. S. [6th ed.] 951, § 60; *Rex* v. *Bingley*, 5
Carr. & P. 602; *Reg.* v. *Morris*, 9 id. 349; 2 Bishop's
Cr. Law, §§ 843–7; *Reg.* v. *Jones*, 1 Den. C. C.; 2 Car. &
K. 236; *Rex* v. *Morfit*, Russ. & Ry. 307; *Rex* v. *Cabbage*,
id. 292; *Hamilton* v. *State*, 35 Miss. 214; *State* v. *Brown*, 3
Strobh. [S. Car.] 508; *State* v. *Ware*, 10 Ala. 814; *People* v.
*Juarez*, 28 Cal. 380; *Reg.* v. *White*, 9 Car. & L. 344; *Reg.*
v. *Wynne*, 1 Den. C. C. 365.)   The testimony relating to the
robbery of the bank while the three masked and armed rob-

bers stood guard over Werckle, gagged and bound, was properly received. (1 Bish. Cr. Pro., § 1067 [2d ed.].; *Heath* v. *Comm.*, 1 Rob. [Va.] 735; *Higgins* v. *State*, 7 Ind. 549; *Burr* v. *Comm.*, 4 Gratt. 534; *Rex* v. *Long*, 6 Carr. & P. 179; *Rex* v. *Fursey*, id. 81; *Rex* v. *Rooney*, 7 id. 517; *Comm.* v. *Hale*, 3 Gratt. 593; *State* v. *Gillis*, 4 Dev. 606.) The evidence of things said and done by other conspirators in the absence of the prisoner, some of them before he became a party to the conspiracy, was properly received. (3 Greenl., §§ 93–94; *Collins* v. *Comm.*, 3 S. & R. 220; *State* v. *Soper*, 16 Me. 293; *Aldrich* v. *Warren*, id. 465; *Reg.* v. *Shellard*, 9 C. & P. 277; *Reg.* v. *Blake*, 6 Q. B. 126; *Rex* v. *Stone*, 6 T. R. 527; *U. S.* v. *Cole*, 5 McLean, 513; *Comm.* v. *Timon*, 8 Gray, 375; *Cornelius* v. *Comm.*, 15 B. Mon. 539; *Malone* v. *State*, 8 Ga. 408; *Gardner* v. *People*, 3 Scam. 83; *Reg.* v. *Murphy*, 8 Car. & P. 297.)

RAPALLO, J. The demurrer to the special plea interposed on behalf of the prisoner was properly sustained. The substance of the plea is, that the grand jury, by whom the indictment was found, did not proceed in accordance with law, but considered, regarded and examined improper, incompetent and irrelevant matters, and the specification is that they had before them for their consideration, and as part of their method of inquiry, and did consider certain *ex parte* affidavits taken before a police justice in an examination had before him as such, together with the examination of the prisoner, taken in accordance with the statute.

We find no authority for the position that the sufficiency of the evidence upon which an indictment is found by the grand jury is a question which can be raised by plea to the indictment, or that the reception of incompetent or irrelevant evidence by the grand jury can be pleaded. *People* v. *Hulbut* (4 Den. 133) is to the contrary, and no case has been cited in support of the plea. The counsel for the prisoner claims that the plea should be considered as a motion to quash. No such motion was made, but the plea was argued on demurrer, and the judgment over-

ruling it was clearly correct. Moreover, it does not state facts which would be sufficient, even on a motion, to require the court to quash the indictment. It does not aver or show that the *ex parte* affidavits were the only evidence before the grand jury, nor that the witnesses by whom they were made were not also personally examined, or that the indictment was not based upon sufficient competent evidence, nor does it contain the very essential averment that any fact material to the case of the prosecution was established by such *ex parte* affidavits, nor does it show that the prisoner was in any manner prejudiced by their being before the grand jury. All that appears on the face of the plea is that the preliminary affidavits and examination taken before the committing magistrate pursuant to the statute were placed before the grand jury as a part of their method of inquiry, and were considered by them. There is nothing to show that the grand jury made any improper use of these examinations or did not proceed according to law. The statute makes it the duty of the magistrate before whom an offender is brought for examination, to certify all examinations taken before him, to the court having cognizance of the offense and in which the prisoner may be indicted, on the first day of its next session (2 R. S. 733, §§ 21, 26); and one purpose of this requirement, doubtless is that these papers may be laid before the grand jury to aid them in their investigation of the case. We are not aware that it has ever before been claimed that placing these papers in the hands of the grand jury vitiated an indictment.

The next point urged in behalf of the prisoner is, that the third and fourth counts of the indictment are bad, and that the court erred in not excluding all testimony offered in support of them and in not directing the acquittal of the prisoner.

The objection made to the third and fourth counts is that the key taken is therein alleged to have been the property of the Manhattan Savings Institution, and to have been violently and feloniously taken, as alleged in the third count, from the person of Louis Werckle against his will, and by violence to his person, and as alleged in the fourth count, to have been violently and feloniously taken in the presence of Werckle,

against his will and by putting him in fear of immediate injury to his person, and it is claimed that to constitute a valid indictment for the offense of robbery in the first degree under the statute (2 R. S. 677, § 55), it must be averred that the property was feloniously taken from the person or in the presence *of its owner*, and against *his* will by violence to *his* person, or by putting *him* in fear of some immediate injury to his person. That therefore an indictment averring the taking of the property of one person by committing violence upon, or putting another person in fear, etc., is not good; and further that the offense of robbery in the first degree cannot be committed upon a corporation, as violence cannot be committed upon the person of a corporation, nor can it be put in fear of injury to its person. The sufficiency of these counts is claimed by the prosecution to be established by the case of *Brooks* v. *People* (49 N. Y. 436), but we do not think it material now to examine the question. In all the counts the robbery is alleged to have been committed upon Werckle. The first and second counts, which lay the property in him, are conceded to be good. Even if the others were bad, that would be no ground for directing an acquittal of the prisoner on the whole indictment, and an acquittal specially on the third and fourth counts would be of no importance, so long as he was convicted upon the good counts, the robbery being the same, and the only difference between the counts being in the allegation of ownership. On the question of evidence no point arises, for there was no evidence specially objected to as inadmissible under the third and fourth counts, nor was any offered or received specially in support of those counts, nor was any evidence received which, if competent for any purpose, was not competent to sustain the good counts. Nor is the conviction rendered erroneous, the verdict being general, merely by reason of there being bad counts in the indictment, provided some of the counts are good. Whether the prisoner is found guilty or acquitted on the bad counts in such a case is matter of no importance; though the bad counts describe no offense, his conviction upon the good counts is not impaired, and he would be

in no better condition if the court had on the trial withdrawn the bad counts from the consideration of the jury. We express no opinion, therefore, as to the sufficiency of the third and fourth counts.

It is further urged on behalf of the prisoner that the offense of robbery was not made out, because the keys were not taken *animo furandi*, or with the intent to deprive the owner of the property or to convert it to the use of the robbers, but that they only wanted the temporary use of the keys to enable them to enter the bank and rob the safe. Also that the violence was committed for the sole purpose of extorting from Werckle the combination of the safe, and not for the purpose of obtaining the keys.

Although the intent with which the robbers entered Werckle's room is not controlling, we think the evidence was sufficient to justify the jury in finding, if necessary, that they designed to obtain the keys as well as the combination. It was shown that they took the keys from his table, in his presence, and the evidence was sufficient to warrant a finding that this was done against his will and by putting him in fear of immediate injury to his person, as well as by disabling him from making the resistance which he doubtless would have made to their asportation had he been free, and not in fear. He testified that when they took the keys they had entered his room masked, while he was in bed, and had throttled, suffocated and handcuffed him, and by putting a pistol to his head compelled him to disclose the combination of the lock of the bank safe, and put him in such a state of terror as to be incapable of resistance. That they then took the keys from a table in his presence, one of them being the key to the street door of the bank. That having thus possessed themselves of the keys, they carried them off and never returned them, and there is no evidence of any intention to return them, or that the street door key has ever been recovered. This evidence was ample to justify the jury in finding a felonious taking of the keys from Werckle against his will and in his presence, by violence to his person and by putting him in fear of immediate injury to his person, and such a finding

establishes the charge of robbery in the first degree. (2 R. S. 677, § 55. The intent with which the property was taken was a question of fact for the jury. It cannot surely be a defense in law that the gang afterward used the keys, or any of them, in the commission of the further crime of despoiling the bank. If a servant should be attacked by robbers on the highway and a key should be taken from his person by force and carried off by his assailants, it could not be tolerated that the fact that they afterward used the key in feloniously entering the house of the servant's master, should be held to constitute a defense to the charge of robbery ; nor would the jury be bound to find as matter of fact, that their sole intent in taking the key was to use it for the purpose of entering the house, and then to restore it. If they forcibly took the key, intending to appropriate it, and did appropriate it, the use which they afterward made of it, even if in their minds at the time of the taking, cannot affect the question of their guilt, and it was for the jury to say whether they intended to appropriate the keys to their own use.

It was not important whether the robbers formed the plan of taking the key before they entered the room, or put Werckle in a state of fear, or whether it was an afterthought suggested by seeing it on the table. If they availed themselves of the state of terror in which they had put Werckle, in extorting from him the secret of the combination, to enable them to take the key also, that was sufficient. Should robbers attack a traveler with the intent of robbing him of a sum of money which they supposed he had about him, and put him in fear for that purpose, and while he was in that condition they should find upon him a watch which they did not previously know that he had, and availing themselves of his condition should take the watch, can it be doubted that they could be convicted of robbing him of the watch? The question of the felonious taking of the key was submitted to the jury in the manner most favorable to the prisoner. The court charged, at the request of the prisoner's counsel, that in order to convict, the jury must find that the prisoner took the key with the intent to convert and appropriate it to his own use ; that his guilt

of the burglary would not justify his conviction of the robbery; that if the jury entertained any doubt as to the intent to take and permanently appropriate the key, they must acquit, and that if it was not feloniously taken, originally, it not being returned, would not make out a felonious taking.

Numerous exceptions were taken on the trial to rulings of the court in admitting evidence of the burglary committed on the bank and the breaking open of the safe, and the larceny of the valuables therein. This evidence was admissible for the purpose of showing that the prisoner was one of the gang who committed the robbery of the key. At the time of that robbery they were all masked, and could not, therefore, be directly identified, but it was competent to show that a burglary was committed on the bank on the same occasion, and that the gang who committed the burglary were the same who committed the robbery, and thus by connecting the prisoner with the burglary, to connect him also with the robbery. It is true as a general rule, that on a prosecution for one crime it is not proper to prejudice the jury against the prisoner by showing him to have been guilty of another; but where the evidence is relevant and material on the question of the guilt of the prisoner of the crime for which he is upon trial, it cannot be excluded merely because it also proves him guilty of another crime.

The circumstances on which the prosecution relied, in part, to establish the prisoner's participation in the robbery committed on Werckle, were, that on the same morning, and immediately after the attack upon him, and the taking of the key, and while three of the gang remained in his room and stood guard over him on the second floor, the others went down stairs and entered the bank by means of the key, and forcibly opened the bank-safe with burglars' implements. That the prisoner was seen near the bank building about half an hour before Werckle's room was entered, and also about twenty minutes afterward, and that while Werckle was under guard up stairs, and the opening of the safe was going on in the banking room down stairs, the milkman, who served Werckle's

family with milk, came to the street door, leading to Werckle's apartments, and made the usual signal, and the prisoner came out of one of the doors leading from the banking-rooms to the street, and told the milkman that the family had gone to the country, and wanted no milk.

Having thus given evidence tending to show that the prisoner was on the premises while the robbery of the bank was going on, the prosecution sought further to connect him with the gang engaged in the crime, by showing his previous complicity with them in a scheme to enter and rob the bank. On this line of inquiry the most serious questions in the case arise.

Patrick Shevlin, who had been employed as watchman of the bank on Sundays for several years, and occasionally went there evenings during the week, testified that on the night before the robbery, viz.: Saturday night, the 26th of October, at about a quarter-past eleven o'clock, two men came to the weather door of the bank and made a signal to him, which had been preconcerted between him and them, and signified that they wished him to let them in. These men were Jimmy Hope and Big Pete. It appears in the case and in the points of the counsel for the prisoner, that Jimmy Hope is the father of the prisoner, John Hope. Shevlin testifies that he did not let them in, but went out and met them in the street, and there were there also one Abe Coakey and the prisoner, and another man known as Brooklyn Jimmy, whom the witness had on the night of the previous Monday seen in company with the prisoner in the vicinity of the bank. He also testified to having seen all these persons, either together, or in proximity to each other, in the street near the bank, on the nights of Monday and Thursday next preceding the robbery, and his testimony tended to show that they were associated together.

The prosecution was then allowed to show by this witness, that for upward of two years a conspiracy had been on foot to rob the bank; that Jimmy Hope was the leader, and had opened the subject to the witness, and it had been agreed between them that witness should let him into the bank so that he

might break into the safe; and, in fact, witness had, on two occasions before the robbery was consummated, let Jimmy Hope into the bank on Sunday, and attempts had then been made to open the safe, which were unsuccessful; that in the beginning other persons were concerned with Hope in the scheme, but he had changed his associates; that the consultations between Jimmy Hope and the witness on the subject of robbing the bank were very numerous, and continued at intervals down to the night before the robbery, when Jimmy Hope, and his son the prisoner, and the other persons named, were hovering about the bank, and the signal was given by Jimmy Hope to the witness to be admitted into the banking-room, and the testimony tends to show that it was intended at that time to consummate the scheme, but that Shevlin did not perform his part; he assigning as the reason, his fear that the night-watchman, who was then in the bank, would be murdered if the thieves were admitted at that time:

We think that all this evidence was properly received for the purpose of showing that a scheme to rob the bank had been and was on foot, in which Shevlin and Jimmy Hope and others from time to time participated, and that the prisoner had become a party to it, and that his presence there on the next morning, Sunday, when the crime was consummated, was not accidental or innocent, but that he was one of the persons engaged in the criminal transaction, and thus to connect him with the robbery of the key, which was evidently committed by the same persons who broke into the safe.

The numerous exceptions taken to evidence of the condition of the bank and the safe after the robbery, and of the stealing of the securities from the safe, are covered by what has already been said. It was properly admitted for the purpose of showing that a burglary had been committed on the bank while the prisoner was there, and to confirm the theory of the prosecution, that the prisoner was one of the burglars, and consequently one of the gang who committed the robbery upon Werckle.

We find no error in the admission of the evidence as to

what occurred in the presence of the prisoner after his arrest in respect to his identification, and the manner of his identification.

We have examined the charge and the various requests and refusals to charge, and are of opinion that no error was committed in these respects.   As to the intent with which the key was taken, the jury were clearly instructed that that was a question of fact for them to determine, and that unless they found that it was taken with the intent to permanently appropriate it, or if they entertained any reasonable doubt as to that having been the intent, they must acquit.   We do not think that it was error to go farther, or to follow the prisoner's counsel in the theories suggested by him as to what different intent might have been in the minds of the takers.   Nor was there error in refusing to give specific instructions to the jury as to the method they should pursue in weighing the evidence of the witnesses.   The court, in answer to some of the requests, charged the jury that they should take into consideration all the facts of the case, and if they had any reasonable doubt of the prisoner's guilt, they should acquit, and that the weight to be given to all the evidence was within their province, and not his.   He had charged them specifically as to the facts which they must find to authorize them to convict, and we think his charge in this respect was quite favorable to the prisoner.   The request of the court to the jury to endeavor to reconcile their differences, if any should exist, so that a conclusion might be reached, and that the trial might be a final disposition of the case, did not constitute error.

The judgment should be affirmed.

All concur.

Judgment affirmed.