## COURT OF APPEALS,

### Oct. 21, 1913.

# THE PEOPLE v. WILLIAM J. CUMMINS.

### (209 N. Y. 283.)

(1.) APPEAL FROM JUDGMENT OF CONVICTION—CODE CRIM. PRO., § 542—
HAS NO APPLICATION ON BEHALF OF APPELLANT IN COURT OF AP-
PEALS.

Section 542 of the Code of Criminal Procedure, which provides
that an appellate court may give judgment in a criminal case with-
out regard to technical errors or defects, or to exceptions which do
not affect the substantial rights of the parties, has no application
in behalf of an appellant in a criminal case in the Court of Ap-
peals, where the only questions which can be considered (except
in capital cases) are questions of law raised by exceptions.

(2.) SAME—NECESSITY OF EXCEPTIONS EXCEPT IN CAPITAL CASES—WHEN
OBJECTIONS TO OPENING OF DISTRICT ATTORNEY CANNOT BE SUS-
TAINED.

Where counsel for the defendant, in a criminal case, without
specifying any particular passage in the opening address of the
district attorney as objectionable or unwarranted, requested the
court to instruct the jury that such address should not be con-
founded by them with evidence and that it was the duty of the
district attorney to state, simply, what he intended to prove
against the defendant, it was not error for the court to deny such
request.

(3.) SAME—OBJECTIONS TO EVIDENCE EXAMINED AND HELD INSUFFICIENT
OR HARMLESS.

It cannot be held that a defendant, convicted of grand larceny,
was gravely prejudiced by proof of a mass of facts claimed to be
irrelevant and immaterial to the issues, occurring both prior and
subsequent to the alleged larceny, where much of the evidence thus
attacked was properly received as bearing upon defendant's motive
and intent, and, especially, where the defendant, on account of his

own course at the trial opened the door to the reception of most, if not all, of the evidence of which he complains.

**(4.)** SAME—WITNESS—EVIDENCE WHERE REMARKS OF JUDGE GRANTING CERTIFICATE OF REASONABLE DOUBT, PROPERLY EXCLUDED ON APPEAL.

Where it appeared that a witness for defendant had previously been convicted of making false reports to the state banking department, but had been admitted to bail upon appeal, under a certificate of reasonable doubt, it was not error to exclude the remarks made by the judge, before whom such witness was tried and who granted the certificate, to the effect that neither he nor the jury regarded such witness as a criminal or a person with criminal tendencies, although it was proper to receive in evidence the certificate as bearing upon the credibility of the witness.

**(5.)** SAME—CONVICTION UNDER GENERAL VERDICT NOT ERRONEOUS BECAUSE EVIDENCE DOES NOT SUSTAIN ALL THE COURTS OF THE INDICTMENT IF IT IS SUFFICIENT TO SUSTAIN SOME OF THEM.

A general verdict of conviction cannot be reversed upon the ground that there was no sufficient proof in support of two of the counts of the indictment, where there was no request that the jury should be instructed to find specifically on each count, and where the Appellate Division has expressly held in an unanimous affirmance that there was evidence bearing upon the commission of the crime as charged in each count. A conviction under a general verdict is not rendered erroneous by the presence of bad counts in an indictment, provided some of the counts are good.

**(6.)** SAME—OBJECTION THAT EVIDENCE IS IMPROPER BECAUSE UNCONSTITUTIONAL MUST BE SPECIFIC.

An objection to evidence against a defendant indicted for grand larceny because unconstitutional, as compelling the defendant to be a witness against himself, must be specific, and a general objection that the evidence is immaterial and irrelevant is insufficient. The fact that the trial judge erroneously stated that, in a criminal case, it was not necessary to state at length the grounds of objection, is not sufficient ground for reversal, where it is clear that such statement had no serious misleading influence upon counsel for defendant. It is further held on examination of the evidence that, assuming the objections were sufficient, the constitutional right of the defendant (Cons. N. Y. art. 1, § 6) was not violated.

*People* v. *Cummins*, 153 App. Div. 93, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 15, 1912, which affirmed a judgment rendered at a Criminal Trial Term upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

The facts, so for as material, are stated in the opinion.

*D-Cady Herrick, Herbert C. Smyth* and *James Boyd Potter* for appellant.

Section 542 of the Code of Criminal Procedure has ordinarily been invoked to sustain convictions where the substantial rights of the defendant have not been invaded upon the trial. It is equally applicable in favor of a defendant to reverse a conviction against him where errors upon the trial may have affected a substantial right. (People v. Spohn, 206 N. Y. 516; People v. Ford, 200 N. Y. 209.) The trial court erroneously refused to instruct the jury in effect that it must be guided by the evidence and not by the statement of counsel. (People v. Fielding, 158 N. Y. 553.) It was prejudicial error to allow in evidence proof of a mass of facts entirely foreign, irrelevant and immaterial to the issues occurring both prior and subsequent to the alleged larceny. (Wigmore on Evidence, 2460, § 1863; People v. Molineux, 168 N. Y. 264; People v. Liscomb, 60 N. Y. 559; People v. Pettanza, 207 N. Y. 560; People v. McLaughlin, 150 N. Y. 365; People v. Teale, 196 N. Y. 372; Travis v. Stewart, 98 N. Y. S. R. 211; Sentenne v. Kelly, 59 Hun, 513; People v. Barringer, 76 Hun, 330; People v. Leland, 56 N. Y. S. R. 74.) It was prejudicial error for the trial justice to allow the cross-examination of the defendant and his witnesses to be conducted in the manner, to the extent, and with reference to the extraneous matters disclosed by this record. (People v. Webster, 139 N. Y.

73; People v. Freeman, 203 N. Y. 267.) It was error to exclude the statement made by the court in connection with the pronouncement of sentence upon Joseph B. Reichmann; also the reasons for the certificate granted to him. (Sisson v. Yost, 35 N. Y. S. R. 136.) The addresses of the district attorney to the jury present reversible error. (People v. Smith, 162 N. Y. 520; People v. Bissert, 71 App. Div. 118; People v. Mull, 167 N. Y. 247; People v. Milks, 55 App. Div. 372; People v. Smith, 180 N. Y. 125; People v. Kathan, 120 N. Y. S. R. 1096; Smith v. L. I. R. R. Co., 114 N. Y. Supp. 228; Hamilton v. T. Ave. R. R. Co., 55 N. Y. 25; People v. Fielding, 158 N. Y. 542.) It was error to deny the motion to take the fourth and fifth counts of the indictment from the jury, and the general verdict of guilty was contrary to the law and the evidence. (People v. Neff, 191 N. Y. 210; People v. Miller, 169 N. Y. 339; People v. Morse, 99 N. Y. 662; Loomis v. People, 67 N. Y. 322; People v. Cohen, 148 N. Y. 205; People v. Budd, 117 N. Y. 1; Rosenstock v. Metzger, 136 App. Div. 620; Guenther v. People, 24 N. Y. 100; Hope v. People, 83 N. Y. 418.) The record shows that the constitutional privilege and immunity of defendant against self-incrimination were violated at the trial and that the indictment was prosecuted in violation of the constitutional rights of the defendant. (People v. Gillette, 126 App. Div. 665; Hoetsman v. Kauffman, 97 Penn. St. 147; People v. Sharp, 107 N. Y. 427; People v. Kelly, 24 N. Y. 74; Counselman v. Hitchcock, 142 N. Y. 547; People ex rel. Taylor v. Forbes, 143 N. Y. 219; People ex rel. Lewishon v. O'Brien, 176 N. Y. 253; Brown v. Walker, 161 U S. 591; Regina v. Boyes, 1 B. & S. 311; Boyd v. United States, 116 U. S. 616.)

*Charles S. Whitman, District Attorney (John Kirkland Clark and Robert C. Taylor of counsel), for respondent.*

This court (except in capital cases) is confined by the Constitution to the review of questions of law, and is without power to consider the weight or sufficiency of evidence. (People v. Bright, 203 N. Y. 73; People v. Thompson, 198 N. Y. 396; People v. Laurence, 137 N. Y. 517; Place v. N. Y. C. & H. R. R. Co., 167 N. Y. 345; People v. Glen, 173 N. Y. 395; People v. Smith, 162 N. Y. 520; M. Nat. Bank v. Barnes, 172 N. Y. 618; People v. Elliott, 172 N. Y. 146; Snead v. Bonnoil, 166 N. Y. 325; Hickok v. Auburn L., H. & P. Co., 200 N. Y. 464.) Exceptions are needed; the court possesses no plenary power. (People v. Boas, 92 N. Y. 560; People v. Hovey, 92 N. Y. 554; People v. D'Argencour, 95 N. Y. 624; People v. Guidici, 100 N. Y. 503; People v. Donovan, 101 N. Y. 632; People v. Brooks, 131 N. Y. 321; People v. Grossman, 168 N. Y. 47; People v. Sherlock, 166 N. Y. 180; People v. Driscoll, 107 N. Y. 414; People v. Lyons, 110 N. Y. 618; People v. Leonardi, 143 N. Y. 360; Reed v. McCord, 160 N. Y. 330; People ex rel. Stephenson v. Bingham, 205 N. Y. 168.) Cummins, having nothing but the possession or custody of the fund, which he knew was impressed with a trust, converted the fund to his own use. As he never had more than bare custody or possession this was larceny. If he got this possession by fraud or artifice his act of misappropriation was common-law larceny by trick and device. (People v. McDonald, 43 N. Y. 61; People v. Smith, 53 N. Y. 111; People v. Loomis, 67 N. Y. 322; People v. Morse, 99 N. Y. 662; People v. Miller, 169 N. Y. 339; People v. Neff, 122 App. Div. 135; 191 N. Y. 210; People v. Laurence, 137 N. Y. 517; People v. Mills, 91 App. Div. 331; 178 N. Y. 274; People ex rel. Perkins v. Moss, 187 N. Y. 410; People ex rel. of immaterial matter was received in evidence is not sustained. (People v. Marrin, 205 N. Y. 275; Farrel v. People, 21 Hun, 485; Mayer v. People, 80 N. Y. 364; People v. Shulman, 80

N. Y. 373; People v. Levin, 119 App. Div. 233; 194 N. Y. 554; People v. Schlessel, 127 App. Div. 510; People v. Dolan, 186 N. Y. 4, 10; People v. Neff, 191 N. Y. 210.) There was no error in excluding certain opinions of the court. (People v. Gibson, 24 App. Div. 12; People v. Leland, 73 Hun, 162; People v. Helmer, 154 N. Y. 596, 601.) Error cannot be predicated upon alleged prejudicial conduct of the district attorney. (Dimon v. N. Y. C. R. R. Co., 173 N. Y. 356; People v. Conklin, 175 N. Y. 333; People v. Doody, 172 N. Y. 165; People v. Smith, 180 N. Y. 125; People v. Rimieri, 180 N. Y. 163.) There was no error in submitting the fourth and fifth counts of the indictment to the jury. (People v. McDonald, 43 N. Y. 61; People v. Smith, 53 N. Y. 111; People v. Loomis, 67 N. Y. 322; People v. Morse, 99 N. Y. 662; People v. Miller, 169 N. Y. 339; People v. Neff, 122 App. Div. 135; 191 N. Y. 210; People v. Sullivan, 173 N. Y. 122; People v. Davis, 56 N. Y. 95; People v. Hawker, 75 N. Y. 487.) The claim that Cummins was made to incriminate himself is not sustained. (People v. Singer, 18 Abb. [N. C.] 96; People v. Haines, 1 N. Y. Supp. 55; People v. Willis, 23 Misc. Rep. 568; People v. Gillette, 126 App. Div. 665; State v. Lloyd, 139 N. W. Rep. 514; Comm. v. Cameron, 229 Penn. St. 592; People v. Elite Distributing Co., 76 Misc. Rep. 577; People v. Spiegel, 143 N. Y. 107; Jardine M. Co. v. Huguet Silk Co., 203 N. Y. 273; People v. Hughes, 137 N. Y. 29.)

WILLARD BARTLETT, J.:

The events which led to the indictment and conviction of the defendant in this case grew out of the financial embarrassments of the Carnegie Trust Company in the city of New York in the spring of 1910. That institution was then practically under the control of the defendant and his allies in business

operations. Some of them were also more or less interested in the affairs of three other banking corporations in New York: The Van Norden Trust Company, the Nineteenth Ward Bank and the Twelfth Ward Bank. A time came when a large sum of money was needed to prevent disaster to these institutions or some of them; and it was in the process of procuring funds for that purpose that the checks were given, the proceeds of which the defendant is accused of having stolen.

These checks were four in number and represented $140,000 in the aggregate. They were all dated April 23, 1910, and were drawn by the Nineteenth Ward Bank to the order of the Carnegie Trust Company—one on the National Reserve Bank for $5,000; one on the Chase National Bank for $10,000; one on the Mercantile National Bank for $25,000; and one on the Empire Trust Company for $100,000.

It is undisputed that the defendant received the proceeds of these checks and used them to take up various loans to himself and other persons. The checks were indorsed by Robert L. Smith, vice-president of the Carnegie Trust Company, and turned over to the defendant who deposited them in his personal account. The principal question litigated upon the trial was whether this use of the checks and their proceeds was authorized- or not.

The checks were given ostensibly to effect two loans aggregating $140,000 to the Merchants and Manufacturers Securities Company and one Charles A. Moore, Jr., on their unsecured notes. The money, however, according to the theory of the prosecution, was to go to the Carnegie Trust Company for a specific purpose. A considerable quantity of the stock of the Nineteenth Ward Bank and the Twelfth Ward Bank had been pledged as collateral security for certain loans which are described in the case as the Van Norden loans. There was danger that this collateral might suddenly be sold; and to

avert that danger the Nineteenth Ward Bank, urged so to do by the defendant and his associates, consented thus to turn over $140,000 to the Carnegie Trust Company to be used by that institution in paying off the Van Norden loans and acquiring the pledged stock, which it was to hold in trust for the bank.

The contention of the defendant, on the other hand, was that no such trust or transaction was contemplated; that the Nineteenth Ward Bank lent the money on the unsecured notes of Charles A. Moore, Jr., and the Merchants and Manufacturers Securities Company with the intent and knowledge that it was to be used by the defendant " to protect the general situation " as he called it; that is to say, in furtherance of a scheme which had for its ultimate object the effectuation of a merger between the Van Norden Trust Company and the Carnegie Trust Company. In brief, the position of the defendant upon the trial was that he used the proceeds of the checks, with the consent of the borrowers, precisely as was contemplated by the bank which made the loan which the checks represented.

The issue of fact thus presented was resolved by the jury against the defendant; and in view of the unanimous affirmance by the Appellate Division we cannot inquire into the sufficiency of the evidence to sustain the verdict.

There were six counts in the indictment. The third and sixth counts were withdrawn from the consideration of the jury, who rendered a general verdict of guilty upon the four counts which remained. All of these remaining counts charged the defendant with larceny by appropriating to his own use the four checks which have already been described. The first and fourth counts were in the common-law form, while the second and fifth charge the larceny to have been committed by the defendant as an agent, bailee or trustee. In two of the counts the property was alleged to belong to the Carnegie

Trust Company, while in two others it was described as that of the Nineteenth Ward Bank.

Notwithstanding the simplicity of the issues arising upon the indictment and plea, the trial was so conducted as to develop a series of complicated inquiries which have made up a voluminous record, covering upward of 2,500 pages, without taking into account the exhibits.   A critical examination of this record has involved much labor, but has been demanded by the suggestion of defendant's counsel that he was convicted for wrecking the Carnegie Trust Company rather than for the larceny of the checks specified in the indictment.   As a result, I am satisfied that the defense was as much responsible as the prosecution for the wide scope which the inqniry assumed; and I think that the learned trial judge in his charge brought the true issue so clearly and sharply to the attention of the jury that they could not have been misled, and must have disposed of the case on its true merits irrespective of extraneous considerations.

The ·case has been so elaborately reviewed in the opinions of the Appellate Division that I deem it necessary only to discuss some of the chief points which have been specially emphasized in the arguments in behalf of the appellant in this court.

Under the general proposition that the defendant has not had a fair trial, we are asked to make a novel application of section 542 of the Code of Criminal Procedure.   That section reads as follows:   " After hearing the appeal the court must give judgment, without regard to. technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."   While conceding that this provision has ordinarily been invokcd to sustain convictions where the substantial rights of the defendant have not been invaded, the learned counsel for the appellant contends that it is equally applicable in favor of a convicted defendant; that it imposes

upon the appellate court the duty of seeing to it that the defendant has had a fair trial; and that this duty is so all-embracing that where the record shows he has not had such a trial it is incumbent upon the appellate court to reverse the judgment even if there be no exceptions whatever directed to the alleged error or errors.

I think that this view is based on a misapprehension of the purpose and scope of the Code provision. Under the criminal procedure which formerly prevailed, reversals were common for technical errors which really had not affected the result; and it was to do away with this evil that section 542 of the Code of Criminal Procedure was enacted. It has no application in behalf of an appellant in a criminal case in the Court of Appeals, where the only questions which can be considered (except in capital cases) are questions of law raised by exceptions. (People v. Grossman, 168 N. Y. 47, 52, and cases there cited.) In the absence of such exceptions in a case like the present, this court has no power to interfere with the judgment on the ground that the defendant has not had a fair trial. The jurisdiction of the court is thus limited and it may not be broadened by construction.

I would not be understood, however, as intimating that this would be a proper case for the exercise of such power, if we possessed it. Certainly, if the trial had been unfair, that fact would have impressed itself upon the mind of the counsel for the defendant, who participated in it from beginning to end; yet in closing his address for the defense, after expressing his appreciatiion of the presiding judge as "fair-minded as a justice can be," he said: *This trial has been to me a lesson. It has been a lesson in how a trial should be conducted and I shall cherish it.*" After this it can hardly be seriously contended that the judgment ought to be reversed on the general ground that the trial was unfair.

At the close of the district attorney's opening address, counsel for the defendant requested the court " to instruct the jury that the opening of the district attorney should not be confounded by them with evidence and that the duty of the district attorney in opening the case was simply to state to the jury what he intended to prove for the purpose of establishing the case that has been brought against the defendant, William J. Cummins." To this request the court responded: " I see no necessity for instruction to the jury at this point," to which denial counsel for the defendant respectfully excepted.

It is to be noted that in the request thus made to the court counsel did not specify any particular passage in the district attorney's opening as objectionable or unwarranted. There had been nothing to suggest that the jury were expected to pay any attention to the speaker's statements except so far as they should find support in the evidence. The language of the court was an intimation that in any event the desired instruction would be untimely at that stage of the trial, and the request was not subsequently renewed. In the brief for the appellant in this court, the opening of the district attorney is characterized as a vituperative address in which the public prosecutor repeatedly denounced the defendant as a thief, compared him to a burglar and pickpocket and stated that he was a person who was living lavishly and luxuriously in New York without any visible means of support, who needed money and a lot of it and knew where to get it; but nothing of this sort was called to the attention of the trial judge. It was not legal error to refuse the desired instruction at the time when it was requested. The use of epithets by a public prosecutor in addressing a jury is usually more or less a matter of good taste; and while mere vituperation can never receive judicial sanction, it would be going very far to call a district attorney to account be-

cause upon the trial of an indictment for stealing $140,000, he called the defendant a thief.

It is earnestly contended that the defendant was gravely prejudiced by proof of a mass of facts entirely foreign, irrelevant and immaterial to the issues, occurring both prior and subsequent to the alleged larceny. This point requires and has received careful consideration. I am convinced that it is not well taken.

Much of the evidence thus attacked was properly received as bearing upon the defendant's motive and intent. The learned counsel who represented him in this court concedes that proof that the defendant was indebted to a large amount, that the institutions in which he held stock and was a director were also heavily indebted, and that the Carnegie Trust Company was in an embarrassed condition, would furnish a motive for stealing and would tend to show that he meant to apply the money procured from the Van Norden Trust Company and the Nineteenth Ward Bank to the payment of his own indebtedness and that of his associates as well as other obligations due to the Carnegie Trust Company. Nevertheless he contends that where there is no question, as there is no question here, as to who committed the act alleged to constitute the larceny, the motive with which it was committed is of little consequence, and although proof of motive may be relevant under such circumstances, yet it should not be admitted if it is otherwise prejudicial to the defendant. In support of this proposition he cites Wigmore on Evidence (§ 1863) where it is said: " So, also, if certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, or by virtue of the personality of the witness tends to receive an excessive weight in the minds of the tribunal, there is good

ground for excluding such evidence, unless it is indispensable for its legitimate purpose."

Even if it were otherwise applicable this doctrine is not available to the appellant here, on account of his own course upon the trial, which opened the door to the reception of most if not all of the evidence of which he now complains. Early in the case, while a witness for the People was under examination, counsel for the defendant announced that the defense proposed to show that certain stock had been purchased with the money alleged to have been stolen and just what was done with that stock; "how the stock was variously distributed to various banks and institutions in this city, in order to protect loans." A list of the stocks and the disposition which the defendant claimed to have made of them was subsequently furnished to the district attorney. This was designed to show that the proceeds of the checks specified in the indictment had really been used by the defendant in the manner contemplated by those at whose instance they were drawn; and it was to meet and overcome this contention that the evidence in question became material. It is quite true that some of it was rather remote; but such error as there may have been in this respect is not sufficient to warrant a reversal. The same observation applies to the criticisms upon the latitude permitted in the cross-examination of the defendant and his witnesses.

As bearing upon the credibility of one of these witnesses, Joseph B. Reichmann, it was made to appear that he had previously been convicted of making false reports to the state banking department, but had been admitted to bail upon appeal, under a certificate of reasonable doubt. The defendant complains because he was not allowed to prove, upon the trial now under review, that the judge before whom Reichmann was tried, in his remarks upon imposing sentence, said that neither he nor the jury regarded Reichmann as a criminal or a person

with criminal tendencies. There is no rule of evidence which renders such an expression of opinion on the part of a trial judge admissible to qualify the effect of a previous conviction upon the credibility of a witness. The certificate of reasonable doubt granted in Reichmann's case was received in evidence, but the opinion of the judge who granted it was excluded as immaterial. This ruling also was correct. The reasons which led to the granting of the certificate did not in any sense constitute a *fact* bearing upon the credibility of the convicted witness.

The proposition is urged upon us that the general verdict in this case should not be allowed to stand, because there was no sufficient proof in support of the fourth and fifth counts of the indictment, which, therefore, should have been withdrawn from the consideration of the jury. No request was made that the jury should be instructed to find specifically on each count. The Appellate Division has expressly held that there was evidence bearing upon the commission of the crime as charged in each count; and in any event the rule of unanimous affirmance obliges this court to assume such to have been the fact. Finally, on this point, it is settled law that a conviction under a general verdict is not rendered erroneous by the presence of bad counts in an indictment provided some of the counts are good. (Hope v. People, 83 N. Y. 418.)

A constitutional question remains to be considered.

At the beginning of the trial a motion was made to dismiss ten indictments, including the present indictment against the defendant, on the ground that he had been compelled to incriminate himself before the grand jury which indicted him, as a witness in a subsequent investigation into a charge of bribery against Charles H. Hyde. This motion was based on an affidavit of the defendant and was opposed by an affidavit of John Kirkland Clark, assistant district attorney, who had been

in charge both of the Hyde investigation and the Cummins investigation before the grand jury. In this opposing affidavit Mr. Clark declared that no testimony given by Cummins had been used against him either directly or as the basis of any investigation, " nor did any answer to any question made by the said William J. Cummins elicit any matter which was new or which has been used against him in the preparation of this case for trial." The motion to dismiss the indictments was denied and the denial involved finding as a matter of fact that these statements in the opposing affidavits were true. It is contended in behalf of the appellant, however, that as the trial proceeded thereafter, the right of the defendant not to be compelled in any criminal case to be a witness against himself (N. Y. Const. art 1, § 6) was repeatedly violated by the admission of evidence in disregard of that right. Assuming that the objections which were taken sufficed to raise the constitutional question (which I very much doubt) I am convinced that no error was committed, in this aspect of the case, of which the defendant is entitled to complain. No proof was offered or received as to any testimony given by the defendant before the grand jury in the investigation of the Hyde case. Evidence was offered and received on this trial relating to certain loans concerning which the defendant had testified in the Hyde investigation; but these matters were really brought into the present case by the defendant himself, who cannot justly complain because they were followed up by the prosecution. The only objection was to the materiality and relevancy of this evidence, save in a single instance where the constitutional ground was specified and the objection was then sustained. It is suggested that counsel for the defendant upon the trial were prevented from specifying the constitutional objection to this evidence by a ruling of the learned trial judge during the defendant's cross-examination, after the court had overruled an

objection to a question put by the assistant district attorney. This appears in the record as follows:

" Mr. Steuer:   Just pardon me a second.

" The Court:   You have got my ruling.

" Mr. Steuer:   May I not state my objection?   If you do not want me to, I am perfectly satisfied to abstain.

" The Court:   After all, Mr. Steuer, in a criminal case it is not necessary to state at length the ground of your objection.

" Mr. Steuer:   I understood, your honor, that rule applied only to a case where a man was being tried for murder in the first degree.

" The Court:   It applies to every case.

" Mr. Steuer:   I do not understand that you could argue an appeal without an exception.

" The Court:   I am not talking about an exception. I am speaking of the grounds of the objection.   It is not necessary to state the grounds of the objection.   You stated your objection and I overruled it.

" Mr. Steuer:   I really did not know that."

The learned trial judge inadvertently erred in this expression of opinion.   While it is true that the grounds of an objection should not be stated at inordinate length, they should be clearly and fully specified to make the objection available on appeal.   In the case of People v. Spiegel (143 N. Y. 107) an objection on the ground of irrelevancy and incompetency was held to be insufficient to raise the point that the evidence objected to was self-incriminating and, therefore, within the constitutional provision.   In the present case, however, it is plain that the intimation which has been quoted had no serious misleading influence upon the counsel for the defendant; for continually in subsequent parts of the record we find them specifying the grounds of the objections which they interposed.

I think, therefore, that under the circumstances we should not be justified in deeming the constitutional objection to have been taken in any instance except where it was expressly brought to the attention of the court.

Notwithstanding the complicated mass of proof in this case and the devious paths in which the evidence was occasionally permitted to stray, I am satisfied after a very careful study of the long record, that the minds of the jurors were clearly directed to the true issues involved, that they were not misled or confused to the detriment of the defendant, and that the case presents no legal error which would justify this court in interfering with the verdict.

The judgment of conviction should be affirmed.

CULLEN, Ch.. J., WERNER, CHASE, COLLIN and CUDDEBACK, JJ., concur; HOGAN, J., not voting.

Judgment affirmed.