Meyer, J.
(dissenting). Because I experience with respect to the majority’s conclusion that the admissibility of nonidentification testimony was not preserved the same “vicarious feeling of strain” that Harris Steinberg experi *723 enced[1] with respect to this court’s holding in People v Cummins (209 NY 283),[2] I respectfully dissent.
In this rape and robbery case the victim testified that she knew her attackers from two or three previous occasions on which they had been to her apartment. She stated that her assailants had then come to talk with her about possible employment opportunities for her, including a position at the moving and storage company at which they were employed. On one of these occasions she was allegedly given a moving company business card.
In the course of investigating the incident, the police took the victim to the moving company in order to have her identify her attackers. A police officer testified on direct examination that on two occasions the victim viewed company employees at work, not including defendant or his codefendant, and identified no one. Similarly, there was evidence at trial, from both the victim and a police officer on direct examination, that the victim failed to identify anyone in a “blank lineup” — a lineup in which neither the defendant nor his codefendant were included.
Defendant objected to the admission of the negative identification testimony concerning the victim’s observations at the moving company as well as the blank lineup. As to the latter, the following colloquy occurred when the People offered into evidence a photograph of that lineup:
“Mr. Noble [defense counsel]: I would just object to the first line-up being introduced at this time. I think it’s irrelevant to the People’s case.
“Mr. Schepis [prosecutor]: May I be heard?
“The Court: Let me understand, you’re saying it’s irrelevant in the People’s case to show that a witness —
“Mrs. Neale [counsel for codefendant]: Did not —
“The Court: Did not identify anybody and then subsequently did? How is that irrelevant?
*724 “Mrs. Neale: But, none of the same parties — I take it back. Neither of the defendants were in the first line-up. This is a third party, entirely — who is in this line-up and not relevant to the People’s case. The fact that she may have seen fifteen line-ups and not picked out anybody or don’t — through pictures or photographs, is not relevant to the issue of identification.
“The Court: All right.
“Mr. Schepis: Yes. Judge, I think it’s most relevant, most germane that this witness was shown a planned line-up in which the courts have found it’s an appropriate procedure. This is a situation where the witness — witnesses’ identification is shown to be reliable by the fact that she saw a line-up, which didn’t contain these people and didn’t pick anybody out. It’s germane for that issue.
“The Court: Objection overruled.”
Later in the trial the following occurred in the course of the direct examination of the police officer who accompanied the victim to the moving company:
“Q. All right, now, after — so — was there any identification of anyone made at the scene of the New York Moving Company by [the complainant] Mrs. Colon?
“A. No.
“Mr. Noble: Again, Your Honor, I object to the testimony about a prior identification proceeding.
“Mr. Schepis: There is no identification.
“The Court: He said there’s no identification. He’s clarifying the issue. There was no identification.
“Mr. Noble: Your Honor, my objection stands.
“The Court: All right.
“Q. And these defendants were not there, is that correct?
“A. Correct.”
The majority now refuses to consider the propriety of admitting the evidence because defendant’s attorney did not say the magic word “hearsay”. Yet the evidence offered was inadmissible because it was both nonprobative and hearsay. It could become probative and admissible, if at all, only when the defense offered evidence intended to show, *725 for example, that the victim was so eager to avenge the crimes committed upon her that she accused the first persons brought before her for viewing. At that point the moving company visit and blank lineup testimony would become probative and relevant, not because such testimony was any the less hearsay, but because it was hearsay which was admissible because it had become relevant to show consistency on the part of the victim in that she had not previously acted inconsistently as the defense claimed.
The victim’s inability to identify anyone as her assailant from a group which did not include defendant was of even less probative value on the correctness of her ultimate identification of him than was the evidence that defendant had type “A” blood and that semen found in and on the rape victim’s body was from a man with type “A” blood, which in People v Robinson (27 NY2d 864) and People v Macedonio (42 NY2d 944) we held not probative because of the large proportion of the population having type “A” blood. It is less probative because there are more people in the population who are not this defendant than there are who have “A” type blood. No matter how many people the victim looked at who were not defendant, her failure to identify defendant as one of them would be irrelevant to her in-court identification of him. Testimony of nonidentification is admissible, if at all, only on rebuttal and even then is not admitted to prove or disprove any fact involved in the issues on trial, but solely to support the credibility of the witness (People v Jung Hing, 212 NY 393, 402).[3] Yet rule 401 of the Federal Rules of Evidence and rule 401 of the Proposed New York Code of Evidence tell us that “‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence” (emphasis added), and rule 1(2) of the Uniform Rules of Evidence defines “relevant evidence” as “evidence having any *726 tendency in reason to prove any material fact” (see, also, Richardson, Evidence [10th ed — Prince], § 4; Fisch, New York Evidence, §3). At the time it was offered the evidence was not relevant because not probative of any fact in issue, and as bolstering evidence “strongly calculated to influence a jury of laymen” (People v Jung Hing, supra, at p 401) was clearly prejudicial.
It is, of course, true that defendant’s attorney could have used other and additional words, including “hearsay” in making his objection, but it is also clear that no Trial Judge with the least experience in trying criminal cases would not understand the basis of the objection being made to rest upon the bolstering purpose of the evidence. That it may have been objectionable at the time offered both because it was not relevant and because it was hearsay does not mean that defendant’s attorney in order to preserve any objection had to refer to both grounds. The demands of trial practice are great enough as it is without applying the rule “strictissimi juris” to every objection made. Particularly is this so when, in the First and Second Departments at least, the making of an objection is governed by Appellate Division rule (22 NYCRR 604.1 [d] [4], 700.4 [d]) reading:
“No attorney shall argue in support of or against an objection without permission from the court; nor shall any attorney argue with respect to a ruling of the court on an objection without such permission.
“However, an attorney may make a concise statement of the particular grounds for an objection or exception, not otherwise apparent, where it is necessary to do so in order to call the court’s attention thereto, or to preserve an issue for appellate review” (emphasis supplied).
Fairness to the People or the court did not require that objection to the evidence in question be phrased differently than it was, for it was at least “otherwise apparent” what was intended. Fairness to the defendant requires that, rather than turn aside his contention on the basis of the hairsplitting distinction which the majority makes, we hold it sufficiently preserved and, since it was both improper and prejudicial bolstering, that we reverse and remand for a new trial.
*727 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Meyer dissents and votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed.

. (Counsel on Appeal [Charpentier ed], p 19.)

. Max Steuer, having sought to put on record the ground for his objection, was told by the Trial Judge that “It is not necessary to state the grounds of the objection. You stated your objection and I overruled it.” Our holding was that the issue was not preserved because “The learned trial judge inadvertently erred in this expression of opinion” (209 NY, at p 298).

. The conclusion that negative identification testimony is inadmissible on the People’s direct case because irrelevant and immaterial to the guilt or innocence of defendant is apparently shared by the Legislature, for it is not included within CPL 60.25 and 60.30, which authorize use of prior identifications as evidence in chief, nor in the code provisions (CPL 710.20, subd 5; 710.30, subd 1) requiring notice to defendant concerning, and establishing procedures for the suppression of, identification testimony to be offered against defendant.