THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. EDWARD PURTELL, Appellant.

Crimes — assault and robbery and grand larceny — trial — evidence — good judgment must be guide of appellate courts in determining whether error requires reversal — rules of evidence to be impartially applied on trial of defendant as second offender — improper admission of evidence of witness for prosecution impeaching statement of previous hostile or recalcitrant witness — error affecting defendant's substantial rights.

1. In reviewing criminal cases good judgment rather than definite rules of law must be the guide of appellate courts in determining when a wrong ruling regarding the admission or rejection of evidence requires a reversal of a judgment of conviction.

2. The rules of evidence are to be as impartially applied to a defendant indicted as a second offender as if he had never before been accused of crime. Care must be taken in determining whether or not an error in the admission of evidence has affected his substantial rights not to be influenced by these previous offenses. The past life of the defendant may affect his credibility with the jury, but cannot affect the rules of law according to which all men in this State are entitled to trial, no matter who they may be or what they have done.

3. Where, upon trial of an indictment charging defendant with the crimes of robbery, assault and grand larceny, in having held up a truck and shot and robbed a passenger thereon of a bag containing money, the question became one of identification, and the chauffeur who drove the truck and had been called by the prosecution, having failed and refused to identify the defendant as the guilty party, the district attorney, claiming surprise, was permitted to cross-examine

18

# 274

## PEOPLE v. PURTELL.

him as to his previous statements, and amongst other questions, asked him, if at the time he told detectives defendant did the shooting he had said anything to defendant, to which the witness answered, " No," it was error to permit a detective, called as a witness on behalf of the People, to contradict such statement and testify that the chauffeur, after identifying defendant, said: " You haven't got a rod on you now. I would like to take a fall out of you." The evidence was incompetent and improper. The People's witness could not thus be impeached and, if the testimony was to corroborate him, it was likewise incompetent. Statements of the chauffeur made in the presence of the defendant were purely hearsay when given by another. The chauffeur himself could be cross-examined by the district attorney regarding such statements as he was a hostile or recalcitrant witness. His answers, however, were final. (*Bullard* v. *Pearsall*, 53 N. Y. 230; *Becker* v. *Koch*, 104 N. Y. 394; *People* v. *DeMartini*, 213 N. Y. 203, 217; *People* v. *Hickey*, 235 N. Y. 188, 193, followed.)

4. An examination of the record shows that the issue was sharply drawn as to defendant's participation in the crime and the evidence of identification somewhat contradictory. The admission of the evidence of the detective was, therefore, an error affecting the defendant's substantial rights.

*People* v. *Purtell*, 215 App. Div. 721, reversed.

(Argued June 1, 1926; decided July 9, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 13, 1925, which affirmed a judgment of the Queens County Court rendered upon a verdict convicting defendant of the crimes of robbery in the first degree, assault in the second degree and grand larceny in the first degree, all as a second offense.

*Sydney Rosenthal* for appellant. The trial judge erred in permitting the district attorney to impeach or discredit the witness Peter Farley after his failure to identify the defendant. (*People* v. *DeMartini*, 213 N. Y. 203; *People* v. *Minsky*, 227 N. Y. 94; *Potter* v. *Browne*, 197 N. Y. 288; *People* v. *De Garmo*, 179 N. Y. 130.)

*Richard S. Newcombe, District Attorney* (*Thomas F. Thornton* and *Peter M. Daly* of counsel), for respondent.

The district attorney did not impeach the witness Peter Farley, and the trial judge was not in error in permitting the district attorney to cross-examine Farley as a hostile witness. (*Iverson* v. *United Traction Co.*, 159 App. Div. 27; *Bullard* v. *Pearsall*, 53 N. Y. 230; *People* v. *DeMartini*, 213 N. Y. 203; *Ritchey L. Corp.* v. *Robertson Cole D. Corp.*, 199 App. Div. 362.)

CRANE, J. One of the most difficult problems which confronts appellate courts in reviewing criminal cases tried before a jury is to determine when a wrong ruling regarding the admission or rejection of evidence requires a reversal of the judgment of conviction. Every error is not fatal. Section 542 of our Code of Criminal Procedure provides that after hearing an appeal the court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties. Whether an error has such an effect necessarily depends upon the nature of the case and the narrowness of the issue. Good judgment rather than definite rules of law must in such cases be our guide.

In this case the defendant was indicted as a second offender. Ten years ago, when about nineteen years of age, he pleaded to petit larceny and later to grand larceny. For the first offense he was sent to the New York Reformatory; for the second to State's prison, where he was confined two years and six months. The rules of evidence, nevertheless, are to be as impartially applied to this defendant on this his third trial as if he had never before been accused of crime. Care must be taken in determining whether or not an error in the admission of evidence has affected his substantial rights not to be influenced by these previous offenses. The past life of the defendant may affect his credibility with the jury, but cannot affect the rules of law according to which all men in this State are entitled to a trial, no matter who they may be or what they have done. Our criminal

procedure and our rules of evidence, according to which crimes are to be proved, may be refined until they lose much of their usefulness and cease to accomplish the purpose for which they were created. On the other hand, they must not be hastily brushed aside or misapplied in the zeal to find a guilty party. Experience has proved that a substantial adherence to our fundamental rules of evidence is the safest and wisest way to administer the criminal law. The necessity for a careful application of our rules of evidence was well stated in *Rutherford* v. *Richardson* (1923 A. C. [H. of L.] by Lord BIRKENHEAD): " The issues pronounced upon by Courts in criminal, and, indeed, in civil matters, are attended with such decisive consequences that the adoption in matters of evidence of a standard of admissibility which is so cautious as to be meticulous may not only be defended but is, in fact, essential."

That there was error in the admission of evidence in this case, affecting the substantial rights of this defendant, and entitling him to a new trial, I shall attempt to show.

Since coming out of jail some eight years ago, the defendant has married, has had two children, and with them was living with his mother and his sister in the borough of Manhattan. He was thirty-two years of age, and worked as a dock hand, unloading ships for a man named Stephen Costello. On the night of October 17, 1923, he was stopped on the street by a detective who knew him personally, and told that he was wanted at headquarters. On October 6 a truck of the International Motors Company was held up at Borden and Review avenues in Long Island City and a bag containing a payroll of $1,400 stolen. Peter Farley was the chauffeur of the truck; John Fetzer, riding with him, had the bag of money. Fetzer was shot but not killed. The case against the defendant became one of identification. Was he the man who shot Fetzer and stole the money?

The materiality of the error, to which I shall later

refer, must, as I have heretofore intimated, depend in a large measure upon the certainty of the identification. Fetzer was in the hospital not far from the jail. After the shooting he did not see the defendant for about seven months. At the trial he testified that as he was riding on the truck, a taxicab drove up, a man jumped out, shot him, grabbed the money bag and got away. He only had a side view of the man's face. He was asked the following questions:

" Q. Do you see the man in the Court Room this morning that shot you? A. Yes, sir, sitting right there [indicating the defendant].    *    *    *

" Q. Now, how many months is this after the alleged crime took place that you were asked to identify him? A. About seven months."

When shown a photograph of the defendant, he was not sure that he was the man and wanted to see him personally. The witness continued:

" A. While he shot me, I looked right at him.    *    *    *

" Q. Well, how did you recognize him? A. By his side face. I didn't see the full face. When he shot me he was side view.

" Q. Now, the only view you ever got of the man you say that shot you was a side face view? A. Yes, sir."

The witness further swears that the man had on a derby hat. The side face view is further explained as follows:  .

" Q. And that is all you saw of the man's face, from his eyebrow over to his ear? A. Yes, sir.

" Q. And you are able to say, that judging a man from the side of his eyebrow to his ear, that this is the man that shot you; is that right? A. Yes, sir."

The chauffeur with Fetzer was Peter Farley, who to the apparent surprise of the district attorney failed and refused to identify the defendant as the guilty party. He was asked:

" Q. Do you see the man in Court that shot him and

took the money? A. By full face I could not identify him.

" Q. Do you see the man in Court that did the shooting? A. No."

The district attorney, claiming surprise, and declaring Farley a hostile witness, was permitted to cross-examine him regarding his previous statements out of court and his testimony in the Magistrate's Court. The witness frankly stated that he told the detectives that the defendant was the man who did the shooting, but he also details the manner of the identification about which there is little dispute. He picked out three photographs of three different men, all of whom he said looked like the culprit. He says that the man who did the shooting wore a slouch hat; Fetzer had sworn that he wore a derby hat; a discrepancy which may not be vital, but bears upon the certainty or uncertainty of the identification. Farley only had a side view of the culprit's face and so told the detectives. Consequently, when he was brought into the room where the defendant was, he could not identify him by the full face. He stood looking at him for a minute. The testimony reads as follows:

" Q. And then you looked him over, straight in the face, in the front of these detectives, and said, ' I cannot identify him this way?' A. Yes, sir. * * *

" Q. Now, after you said that you could not identify the man you said, ' Let me take a look at the side of his face; ' isn't that true? A. Yes, sir.

" Q. And again this man said to you, ' Look me over good. I have done nothing.' Isn't that true? A. Yes, sir. * * *

" Q. And when he turned around to the side face, you said something about that looks like the man; isn't that true? A. That is right.

" Q. And then they arrested him as being the man who committed this crime, isn't that true? A. Yes, sir. * * *

1926.]                    Opinion, per CRANE, J.          [243 N. Y. 273]

" Q. Will you or will you not say whether this man beyond a question of doubt is the man that held up John Fetzer on that day? A. Well, I am not sure."

The following questions in re-direct were asked by the district attorney. They lead up to what was a clear violation of the rules of evidence existing for a long time in this State and repeated in many cases.

" Q. Now, after you identified this defendant did you say anything to him? A. No, I did not.

" Q. Well, after you saw the defendant down there in court and after you had said to Captain Gallagher, ' That is the man,' did you say anything to the defendant? A. No, sir, I did not."

Thereupon the district attorney as part of the People's case called Detective Sadlo who was present at this identification to contradict Farley and to testify what Farley said.

" Q. You are the man who took Purtell over to the station house the morning Farley identified him? A. No.

" Q. Were you there at that time? A. I was.

" Q. Were you there when Farley was taken into the room where Purtell was? A. I was.

" Q. Will you please tell us what took place at that time? A. I was in the room with Purtell when Captain Gallagher called to Farley, who was in an adjoining room, outside the office. Farley came in and faced the defendant, stood about four feet away from him, looked him over, went to step to the right side of him, looked him over, and he pointed at him and he said: ' That is the man.' In walking out he then said: ' You haven't got a rod on you now. I would like to take a fall out of you.' "

An exception was taken to the judge's refusal to strike out this testimony. It was incompetent and improper from every viewpoint. Farley had denied that he said anything to the defendant. This officer is called to contradict him by swearing that he said: " You haven't

got a rod on you now. I would like to take a fall out of you." The People's witness could not thus be impeached. If the testimony were used to corroborate Farley, it was likewise incompetent. (*People* v. *Jung Hing*, 212 N. Y. 393, p. 401.) Statements of Farley made in the presence of the defendant were purely hearsay when given by this witness. Farley himself could be cross-examined by the district attorney regarding such statements, as he was a hostile or recalcitrant witness. His answers, however, were final. In *Bullard* v. *Pearsall* (53 N. Y. 230) this court said through RAPALLO, J., regarding a disappointing witness testifying contrary to expectations: " The further question has frequently arisen whether the party calling the witness should, upon being taken by surprise by unexpected testimony, be permitted to interrogate the witness in respect to his own previous declarations, inconsistent with his evidence. * * * We are of opinion that such questions may be asked of the witness for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his apparent inconsistency. * * * It is only evidence offered for the mere purpose of impeaching the credibility of the witness, which is inadmissible when offered by the party calling him. Inquiries calculated to elicit the facts, or to show to the witness that he is mistaken and to induce him to correct his evidence, should not be excluded simply because they may result unfavorably to his credibility. In case he should deny having made previous statements inconsistent with his testimony, we do not think it would be proper to allow such statements to be proved by other witnesses. * * * As a matter of course, such previous unsworn statements are not evidence, and when the trial is before a jury that instruction should be given."

These principles were reiterated in *People* v. *De Martini* (213 N. Y. 203, p. 217); *People* v. *Hickey* (235 N. Y. 188, p. 193); *Becker* v. *Koch* (104 N. Y. 394).

The United States Supreme Court, in *Hickory* v. *United States* (151 U. S. 303, at p. 309) said: " When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidentally tends to discredit the witness. As to witnesses of the other party, inconsistent statements, after proper foundation laid by cross-examination, may be shown; *C. M. & St. Paul Railway Company* v. *Artery*, 137 U. S. 507; but proof of the contradictory statements of one's own witness, voluntarily called and not a party, inasmuch as it would not amount to substantive evidence and could have no effect but to impair the credit of the witness, was generally not admissible at common law. Best Ev. sect. 645; Whart. Ev. sect. 549; *Melhuish* v. *Collier*, 15 Q. B. 878."

With this error in the admission of Sadlo's testimony we are next to consider whether it affected a substantial right of the defendant. As I have said, the whole case turned upon the question of identification. Farley's testimony was unsatisfactory and contradictory. On the trial he refused to identify the defendant; he admitted having identified him with more or less certainty on previous occasions. To show how sure he was of the identification at the station house Sadlo is permitted to add that Farley said to the defendant: " You haven't got a rod on you now. I would like to take a fall out of you." Sadlo was the only one who testified to these words. They must have had considerable effect with the jury as revealing to them the state of Farley's mind on seeing the defendant in the station house. They helped to clinch the identification. That the district attorney thought them important is indicated by the use he made of these words in his summing up.

The defendant took the stand to testify in his own

behalf. He admits all that Farley testified to upon the stand. He says that Farley at the identification in the station house said that he thought that he, the defendant, looked like the man. He denies that Farley used the words Sadlo attributed to him. Farley denies that he spoke to the defendant. Yet Sadlo, called by the People, proves as part of the People's case that Farley used these words indicating a positive identification, and some ill-feeling. As before stated, these words were improperly allowed to contradict Farley's testimony; they were not competent evidence of identification, being merely hearsay, and they could not be used in corroboration of Farley. That they must have had weight with the jury seems self-evident.

As I have stated, the defendant took the stand in his own behalf. He admitted his previous convictions; he admitted the truth of Farley's testimony; he denied his guilt; he testified that he was home at the time of the holdup. His sister and mother corroborated him, and his employer testified that he came to work that afternoon shortly after the time when the crime had been committed in Long Island City.

I am of the opinion that the issue being sharply drawn as to the defendant's participation in the crime, and the evidence of identification being somewhat contradictory, the admission of Sadlo's testimony was an error affecting the defendant's substantial rights. He is entitled to be tried according to the rules of evidence established by this court, as above stated, and from which we see no occasion to depart.

The judgment should be reversed, and a new trial granted.

HISCOCK, Ch. J., ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., concurs in result; MCLAUGHLIN, J., dissents; POUND, J., absent.

Judgment reversed, etc.