THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JACOB SELLINGER and PHILIP RAWDIN, Appellants.

(Argued May 24, 1934; decided July 3, 1934.)

*Walter S. Beck, Jay Leo Rothschild* and *Edward H. Freiberger* for Jacob Sellinger, appellant.

*Harold R. Medina, William F. McNulty* and *Edward H. Freiberger* for Philip Rawdin, appellant.

*William F. X. Geoghan, District Attorney (Henry J. Walsh* of counsel), for respondent.

LOUGHRAN, J.   The defendants have been convicted of the crime of arson in the second degree upon an indictment which charges that on March 24, 1933, in the county of Kings they willfully burned and set on fire a dwelling house in the night time.   They insist that they have been so prejudiced by the reception of illegal evidence as to have been denied a trial in conformity to law.

The dwelling referred to in the indictment was a frame structure at No. 648 East Forty-eighth street, Brooklyn. At about ten o'clock on the night of March 24, 1933, it was razed by an explosion.   The ruins caught fire and were substantially consumed.   Members of the fire department detected the odor of gasoline and, after the flames had been extinguished, made an examination of the debris.   They found some cotton having the odor of gasoline.   Ownership of the premises was in the wife of the defendant Sellinger.   The dwelling was insured in her name for $13,000.   He occupied it with her as their family home.   The contents were insured in his name for $6,000. His business was that of tea and coffee merchant with an establishment in Long Island City.   The defendant Rawdin was employed in the business as a buyer.

The families of both defendants were sojourning at Lakewood, New Jersey, on the night of the explosion and fire. The defendant Sellinger was questioned by the authorities the following morning. He told them that he had been in his home with the defendant Rawdin about nine o'clock the night before and that both had afterward gone to the home of the latter's father where they had spent the night. He said that, although he knew early the next day of the destruction of his home, he had remained at his place of business; and that when his wife later communicated to him a newspaper account of the occurrence, he had sent the defendant Rawdin to Lakewood to give assurance to their families that " everything was all right." When first questioned the defendant Sellinger denied that he had carried anything into his home at the time he was last there.

Thereafter the defendant Rawdin came from Lakewood in response to a message from the police. At first, he denied that anything had been taken into the Sellinger home when he entered it the night it was destroyed. Ultimately he asserted that some large object had been brought into the house at that time by the defendant Sellinger. Both defendants were subsequently questioned together. The defendant Sellinger then conceded the fact stated by the defendant Rawdin and described the object as a keg of alcohol with which, he explained, he had intended to make whisky.

On June 12, 1933, employees of an underwriters salvage concern, while searching the Sellinger premises, discovered a dismembered human body. By means of articles found upon it the corpse was identified by his relatives as that of one Tommy Cataleno. No vestige of it had been revealed by the earlier investigation made by the fire department.

The principal witness for the People was one John Bolobanich. He denied that he knew the defendants. This denial was undoubtedly a surprise to the People.

The witness was vigorously re-examined by the trial judge. Though sharply and repeatedly pressed to do so, Bolobanich consistently refused to identify either defendant. No one he saw in the court room, he said, had ever spoken to him except the two assistant district attorneys in charge of the prosecution. He testified that he knew Tommy Cataleno, " Sellinger " and " Rawdin; " that about a week before the destruction of the Sellinger home he had a talk with them " for the purpose of a fire; " that " Rawdin " gave him thirty dollars which he handed to Cataleno; that there was delivered to Cataleno " a milk container with cotton in it which smelled like kerosene or benzine; " that they passed by a house on East Forty-eighth street; that something was said by " Sellinger " or by " Rawdin " about leaving a window open — " to. throw in the package they handed over to Tommy Cataleno, to light the package and throw it through the open window; " that on the night of March 24, 1933, he had accompanied Cataleno, who then had " the package " with him, to a place some distance from " the house." This testimony was admitted under objection and exception by the defendants.

When the witness Bolobanich was asked, " How do you know it was Jacob Sellinger? " he answered: " I only knew him as Jack; his name was mentioned in the station house — they told me it was Sellinger." When he was asked, " Who told you Rawdin's name? " the answer was: " A fellow named Jack; he introduced me to Rawdin." There is nothing else in the record to identify the defendants with the persons named by the witness. Their identity as the persons so named could not have been validly presumed from the mere agreement of their surnames with the appellations used by the witness. The refusal of the witness to identify either defendant was persistent and unequivocal. In our opinion, the testimony should not have been admitted. (Cf. *People* v. *Minsky*, 227 N. Y. 94, 97, 98.)

Bolobanich was presented to the jury as a witness committed to close custody to assure his appearance at the trial. The trial judge inquired of him whether he had received any mail while he was in jail. The witness denied receipt of any communication there. After the People had rested, the trial judge, of his own motion, called the bookkeeper of the civil prison and examined him. The bookkeeper testified, under objection and exception by the defendants, that Bolobanich had received two or three letters in the civil prison. This testimony was irrelevant. It was error so to sanction " a contradiction of the witness by another where the only effect is to impeach and not to give any material evidence upon any issue in the case." (*Becker* v. *Koch*, 104 N. Y. 394, 401; *People* v. *Purtell*, 243 N. Y. 273.)

There are discrepancies in the statements of the defendant Sellinger as reported by the authorities. This is not so in the same degree in the case of the defendant Rawdin. His account of his activities, so reported, is in the main a consistent recital. We are often warned of the true significance of the fact, standing alone, of false statements by an accused. (*People* v. *Nowakowski*, 221 App. Div. 521.) It cannot be said that the story of either defendant, as reported by the authorities, would have had the same effect upon the jury without the background of the testimony of Bolobanich.

We are not satisfied that the guilt of the defendants is so clearly exhibited by the record that the material errors on the trial should be disregarded.

The judgments should be reversed, and a new trial ordered.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur; CRANE, J., concurs as to defendant Rawdin, but dissents and votes to affirm as to defendant Sellinger.

Judgments reversed, etc.