THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* CHARLES STOLOF, JOSEPH RIVLIN, ISIDORE GUTMAN
and JACOB WELLNER, Appellants, Impleaded with
Another.

Argued March 16, 1937; decided April 30, 1937.

*William F. Bleakley, Samuel Markewich, Jerome G.
Rosenhaus* and *Milton Friedman* for Joseph Rivlin et al.,
appellants. Reversible error, prejudicial to the rights of
the defendants, was committed by the trial court when it
excluded testimony by a witness after a proper foundation

had been laid to show that the People's key witness had made contradictory and impeaching statements about material matters testified to by that witness on direct examination. (*Larkin* v. *Nassau Electric R. R. Co.*, 205 N. Y. 267; *Hanlon* v. *Ehrich*, 178 N. Y. 474; *Stephens* v. *People*, 19 N. Y. 549; *Gaffney* v. *People*, 50 N. Y. 416; *People* v. *Mallon*, 116 App. Div. 425; *Zimmermann* v. *Ullmann*, 173 App. Div. 650; *People* v. *Weldon*, 111 N. Y. 569; *Stokes* v. *People*, 53 N. Y. 164; *People* v. *Corey*, 148 N. Y. 476; *People* v. *Strait*, 154 N. Y. 165; *People* v. *Helmer*, 154 N. Y. 596; *People* v. *Smith*, 172 N. Y. 210; *People* v. *Purtell*, 243 N. Y. 273; *People* v. *Wilcox*, 245 N. Y. 404; *People* v. *Wood*, 126 N. Y. 249; *People* v. *Sobieskoda*, 235 N. Y. 411; *People* v. *Rosenzweig*, 265 N. Y. 323.) The People failed to prove the crime of attempted extortion. (*People* v. *Barondess*, 133 N. Y. 649; *People* v. *Kelly*, 127 Misc. Rep. 300; *People* v. *Rizotto*, 30 Cal. App. 616; *Strange* v. *State*, 33 Tex. Cr. Rep. 315; *People* v. *Anderson*, 63 Utah, 542.)

*James J. Armstrong* and *Walter R. Hart* for Charles Stolof et al., appellants. There is no evidence to sustain the conviction. (*People* v. *Razezicz*, 206 N. Y. 249; *Lamb* v. *Union R. Co.*, 195 N. Y. 260.) The trial court committed reversible error in the admission and exclusion of evidence. (*Insurance Company* v. *Mosley*, 8 Wall. 397; *People* v. *Hughes*, 137 N. Y. 29; *People* v. *Weinseimer*, 117 App. Div. 603.) The only charge against the defendants substantiated by any proof is that they compelled complainant to pay for his agreement. This they had a legal right to do. (*People* v. *Hughes*, 137 N. Y. 29; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *National Protective Assn.* v. *Cumming*, 170 N. Y. 315; *Commonwealth* v. *Hunt*, 45 Mass. 111.)

*William F. X. Geoghan*, District Attorney (*Henry J. Walsh* of counsel), for respondent. The trial court's ruling excluding proof of prior contradictory statements of the witness Greenberg resulted in no disadvantage to

the appellants in the light of the clear, convincing proof of their guilt. (*Kay* v. *Metropolitan St. Ry. Co.*, 163 N. Y. 447; *Deutschmann* v. *Third Ave. R. R. Co.*, 78 App. Div. 413; *Larkin* v. *Nassau Electric R. R. Co.*, 205 N. Y. 267; *People* v. *Purtell*, 243 N. Y. 273; *People* v. *Roach*, 215 N. Y. 592; *People* v. *Laudiero*, 192 N. Y. 304; *People* v. *Watson*, 216 N. Y. 565.) The appellants were guilty of a violation of the statute. (*People* v. *Barondess*, 133 N. Y. 649.)

HUBBS, J. The five defendants were indicted, charged with the violation of section 850 of the Penal Law by attempting to obtain $300 from Louis Rogoff, a painting contractor, by the wrongful use of force and threats.

The defendants were officers and members of a labor union in the city of Brooklyn, covering the painting trade. The complainant Rogoff was a painting contractor, having contracts for painting then pending. The union called a strike which held up the work on all of his contracts. In order to be permitted to go on with work, all painting contractors who were members of the union were required to get a new contract with the union. Rogoff was a union man and employed union labor. He applied for a new contract. His application was made at the rooms of the association to the five defendants. They refused from time to time to issue a new contract. He testified that he called at the rooms at least ten times before he was able to get the contract in question. They would put him off on one ground and another, refusing to give him any reason why they would not issue the contract. Finally, on one of those occasions, an employee by the name of Cohen came to him and told him that he could not have a contract unless he paid the bums upstairs $300. Prior to that time he had been told by one or more of the defendants that he would be obliged to pay $500. Goodman, one of the defendants, said to him: " Well, we need the money for ourselves, we have to divide for ourselves."

That statement was made in the presence of the other defendants. He told defendants that he had contracts pending and that if they did not give him the contract he would be ruined, and pleaded with them on different occasions to issue the contract. On one occasion Belsky said: "Don't be a wise guy. We don't want you in the business. We don't like you. Everybody pays us. You are no exception."

Finally Rogoff and the witness Cohen went to the office of Mr. Dewey, who sent them to the District Attorney of Kings county, and it was arranged that Rogoff should take $300 in marked money and secure the contract. He went to the association rooms with Cohen and paid over the $300. Belsky put the money in his pocket. At that time detectives broke into the room, arrested the defendants Wellner, who received the money, and Belsky, who had the money in his pocket. Two detectives testified that they asked those defendants if they made any record of the $300 and Belsky said: " He did not have to make a record of it."

Another detective testified that Belsky said he kept the record in his head or words to that effect. At the same time that the money was paid over and the two defendants were arrested, Cohen, a witness for the People, was arrested and taken with the defendants to the police station. He testified that he had asked the inspector of police to arrest him; " I didn't want them to know until the last minute I am a witness because after all you take a chance with them, everybody knows that."

On the trial it was admitted that the defendants insisted on the payment of the $300 and that they received the money. The issue was whether the money was graft or whether it had been received by the defendants in accordance with the instruction of the labor council that Rogoff must pay $300 before a contract would issue, under the claim that he had underpaid union workmen to the extent of $300, and that the council was imposing the payment

of that sum to it as a condition of issuing the contract so that it could make up to the workmen the difference between the union wages which they should have received and the amount which they did receive from Rogoff.

The court charged the jury that if the defendants' purpose was legitimate then they were not guilty. That question was submitted to the jury in a fair charge and it found in favor of the People.

During the negotiations between Rogoff and the defendants in his efforts to secure his contract, on one occasion he took with him to a meeting with the defendants his attorney, Mr. Louis E. Greenberg. Greenberg attempted to persuade the defendants to issue the contract and promised that he personally would see to it that Rogoff lived up to the contract. After he left the meeting, the defendant Wellner approached him and said: " We have got to have $300 for the bums upstairs." I said, " bums? " I said, " Who do you mean? " He said, " The gang."

The contract which was delivered to Rogoff states that the consideration for the contract was the sum of one dollar. It does not refer to the payment of $300.

When the People rested, a strong case had been made out. The defendants then called a large number of witnesses and they disputed the evidence offered by the People's witnesses as to minor details, as to the time of the meetings, who was present, what was said, and various collateral matters which tended to affect the credibility of the complaining witnesses Rogoff and Cohen. They testified that the $300 was received for an innocent purpose; that it was to be used to pay what was termed the kick-back charges, i. e., sums due Rogoff's workmen to make up the union wages which he had failed to pay them. Nowhere in the record is there any testimony that fixes the amount which the defendants claim Rogoff had failed to pay his workmen which they were entitled to under the union rate. One of the local unions claimed an item of something like $150.

That is the only definite figure mentioned. The contract itself failed to show the payment of the $300.

Witnesses testified that in the talk with attorney Greenberg it was stated to him that Rogoff was indebted for the difference between union wages and the amount paid, and the witness Wellner, one of the defendants, testified that Greenberg said to him on the street: " Wellner, why don't you take the $300 for yourself and see that Rogoff gets the contract? "

At the close of the defendants' evidence the People called Greenberg as a witness. It will be recalled that Wellner had already testified as to what occurred at the meeting with Greenberg and had given his version of the conversation that took place on the street. No objection was made that it was not proper to call Greenberg at that time in rebuttal. He testified that he was admitted to practice in September, 1915, and had conducted an office in New York city; that Rogoff was his client and that he went with him to the rooms of the association at the time in question; that he asked Stolof in the presence of the other defendants the reason why his client, who was a union man and maintained a union job, should not receive his contract. Stolof replied that there was a grievance; that Rogoff had agreed with one Sickels, a business agent, that he would employ men from Sickels' local and failed to do so. Rogoff denied that. Sickels was then brought into the room and a discussion took place upon that subject. Finally Stolof said: " I will see that your client gets the agreement." Thereafter, the witness left the room and when on the street was accosted by the defendant Wellner, who stated to him that $300 would have to be paid for the bums upstairs or the gang. He also testified that nothing was said in the conversation upstairs that Rogoff would have to make up the back pay of underpaid former employees who were union men. He testified that the only question that came up was the fact that Rogoff had failed to take men from Sickels' local union and that

that was all ironed out before it was promised that Rogoff should receive his contract.

On cross-examination the witness was asked if he had told Samuel Null, a lawyer, that at the conference between Rogoff and the defendants there was a claim made that Rogoff failed to pay the union scale of wages. It will be recalled that the defendant's witnesses had already given their versions of what was said in that conference and that in rebuttal the witness Greenberg had given his version. In answer to the question, the witnes, answered " no." That was a denial that he had so stated to Null. He was then asked: " Did you tell Mr. Null at that conference that at no time at that conference or outside of the conference that any of the defendants asked for money in the shape of graft?" He answered " no."

After the People rested, Null was called as a witness by the defendants and questions were asked for the purpose of contradicting and impeaching the witness Greenberg. The court declined to permit the answers and the defendants excepted. It is now claimed that those exceptions constitute error which requires the reversal of the judgment of conviction, and it is conceded by the district attorney that the rulings were erroneous. We do not believe that on this record we should substitute our judgment in place of that of the Appellate Division and reverse this judgment because of the alleged error. These defendants were caught red-handed. They had in their possession the graft money, and we do not believe that any one can read this record and have a doubt that they intended to keep it. There is abundant evidence in the record to sustain the finding of the jury.

It took courage on the part of the witnesses Rogoff and Cohen, even when possessed of a just cause, to make the complaint which they made. They were not laboring under any delusions about the chances which they were taking. They were uneducated, poor men. Neither had a criminal record. They knew the type of men

they had to deal with when they voluntarily entered the complaint with the District Attorney. It is hard to believe that they would voluntarily have taken the chances which they did without any basis in fact for so doing.

The trial judge had the advantage of seeing the witnesses and hearing their testimony, and he denied the motion to set aside the verdict of the jury. The Appellate Division has reviewed the evidence and unanimously decided that the erroneous rulings did not require a reversal. The contract delivered upon the payment of the $300 failed to disclose the payment of that sum but recited a consideration of one dollar. No book entry was made of the payment of the money and the two men who received it stated to the police officers that no entry was necessary. One of them said he could keep the record in his head and he might have added, and the money in his pocket. This court is required by the statute, " After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." (Code Crim. Proc. § 542.)

That provision also governed the action of the Appellate Division. Mindful of its provisions, the justices of that court have unanimously decided that the error should be overlooked in the interest of justice and the judgment of conviction affirmed. We have reached the same conclusion. Few cases involving the amount of testimony taken in this case (over 750 pages) are tried without some technical error creeping into the record. We, however, are directed by statute to give judgment without regard to technical errors. Any other course will result in breaking down the enforcement of the criminal law.

Whether an erroneous ruling on evidence requires a reversal is largely a question of judgment. Upon questions of judgment judges, acting in the utmost good faith and with a firm intention by their action to promote

the ends of justice, may reasonably differ. Even in a murder case there may exist a serious difference of opinion upon such a question. (Cf. *People* v. *Wells*, 272 N. Y. 215.) Believing, as we do, that the defendants had a perfectly fair trial and that a just verdict was rendered by the jury, and that the error complained of did not affect the result, we feel under the facts of this case that we should not overrule the judgment of the trial judge and the Appellate Division.

As to each defendant the judgment should be affirmed.

CRANE, Ch. J. (dissenting). I vote to reverse because of the conceded error in the exclusion of evidence which was competent under fundamental rules of evidence applied in nearly every case.

LEHMAN, J. (dissenting). The five defendants have been convicted upon an indictment which charges that they " on September 6, 1935, in the County of Kings, attempted to obtain three hundred dollars in money from Louis Rogoff, by the wrongful use of force and fear induced by the threat of the defendants to do an unlawful injury to the property of the said Louis Rogoff, to wit, preventing him from continuing his business of painting contractor and refusing to allow union painters to work on his jobs."

The defendants in August and September, 1935, were officials of " Brooklyn District Council, No. 18 of the Brotherhood of Painters, Decorators and Paperhangers of America." The complaining witness, Louis Rogoff, was at that time engaged in business as a painting contractor. He held eight contracts for work to be performed in Brooklyn and Queens county. All the contracts provided for the employment of union labor. On August 27th the union called a general strike upon all " jobs " within that district. The complaining witness could proceed with work on the contracts which he had, only if he made his peace with the union and obtained from the union a satisfactory agreement permitting him to

employ members of the union. He visited the office of the union to obtain such an agreement. He was told to return after Labor day, the following Monday. He returned to the office thereafter. He was told to return again. He did so again and again during that week without obtaining a contract. There were discussions. as to the reason for the delay; there was talk as to whether he had violated rules of the union and whether for such alleged violations the union should withhold a new contract. He brought his lawyer to one of the meetings of the council of the local to urge the council to give him a contract. He failed to obtain such a contract until after he paid the defendants $300 at the office of the union.

Before Rogoff paid the money, he complained to the District Attorney. As soon as the money was paid, detectives from the District Attorney's office, acting upon a prearranged signal, came into the room and found the money upon the person of one of the defendants. The People produced testimony, to which reference will be made hereafter, to show that the defendants had brazenly demanded the $300 for personal graft. The defendants did not at any time and do not now deny that they refused to deliver to the complaining witness a contract which would permit the complaining witness to carry on his business unless he paid them $300, but they all maintained that they informed the complaining witness that the money must be paid because, in violation of the rules of the union by which he had agreed to abide, he had paid some of his employees less than the union rate of nine dollars per day and had compelled the employees to sign receipts for the union rate. They testified that in demanding and receiving the money they were acting for the union and pursuant to authority intrusted to them by the union, and that the money was intended to make good to workmen " kick-backs " from previous payments of union rates to which the workmen were entitled.

There is conflict of testimony only upon the narrow issue of whether in demanding the payment of $300 the defendants were attempting to induce the payment of the money for their own use " by a wrongful use of force or fear " in violation of section 850 of the Penal Law, or were acting for the union and in accordance with authority conferred upon them as officers of the union. The jury resolved that issue against the defendants. The Appellate Division affirmed the judgment of conviction under section 542 of the Code of Criminal Procedure, though it found that the trial judge had erroneously excluded competent evidence offered by the defendants for the purpose of impeaching the testimony of one of the witnesses for the People. The District Attorney in his brief urges forcefully that the error should be disregarded as harmless, but with a conscientious recognition that a prosecuting attorney owes to the court and to the accused a duty to present his case fairly, he states that: " We cannot, after examining the authorities dealing with the rule which binds the interrogator to testimony constituting new matter elicited on cross-examination (*Kay* v. *Metropolitan Street Ry. Co.*, 163 N. Y. 447; *Deutschmann* v. *Third Avenue R. R. Co.*, 78 App. Div. 413), and comparing them with the authority relied upon by the appellants (*Larkin* v. *Nassau Electric R. R. Co.*, 205 N. Y. 267), agree with the ruling of the trial court excluding testimony which sought to impeach the witness Greenberg, Rogoff's lawyer, by admissions contradictory to his testimony on the trial to another lawyer, Mr. Null, one of the attorneys for the appellants. However, we believe that the error may be disregarded if this court is satisfied that the proof of the appellants' guilt was not affected by the ruling."

There is, in fact, no room for possible argument or difference of opinion on the point that the ruling of the trial justice was erroneous. I proceed, then, to consider whether the error may be disregarded.

In his opinion, Judge HUBBS has made a summary of evidence produced by the People which he finds establishes the guilt of the defendants. No opinion of reasonable length could contain a complete summary of all the evidence produced on a long trial. Always the judge writing the opinion must select what he deems important and omit what he deems unimportant. Exigencies of space, too, may, at times, justify bare statement of conclusions as to the probative value of evidence without analysis or even statement of the grounds for that conclusion. If the question presented upon this appeal were only whether the competent evidence properly admitted at the trial is sufficient to justify the verdict, I should be content without more to accept Judge HUBBS' conclusion that " there is abundant evidence in the record to sustain the finding of the jury." I agree, indeed, that if the evidence of the prosecution is true the defendants have, for their own illicit gain attempted to betray the trust which the members of the union have confided in them and are enemies of society deserving punishment at least as severe as the law has affixed to the offense. If that testimony is true, I agree that " it took courage on the part of the witnesses Rogoff and Cohen, even when possessed of a just cause, to make the complaint which they made." Under our system of law the jury alone is the judge of whether or not that evidence is true or false. Throughout the opinion there is the assumption that the evidence is true; but only the jury may pass upon the truth and probative force of the evidence against an accused — only the jury may place upon the accused the stigma of guilt and subject him to the pains and forfeitures of liberty and reputation which arise from a finding of guilt. If the evidence erroneously excluded by the trial judge might, if admitted, have so impeached the credibility of the evidence produced by the prosecution that the jury might have reached a different conclusion, then the exclusion of that evidence constituted reversible error, though the trial judge or the judges of the Appel-

late Division, and of this court, might find in the record ample justification for the jury's verdict establishing the guilt of the defendants.

Trial by jury becomes an empty form unless at such trial the accused may challenge the truth of the testimony produced against him, by cross-examination of the witnesses and the introduction of evidence intended to contradict or explain the evidence of the prosecution. It is the duty of the appellate court to determine whether by erroneous ruling the trial court has denied the accused any substantial right. It may overlook errors only when they " do not affect the substantial rights of the accused. The right of the accused to present to the jury for its consideration all the competent evidence relevant to the issue and which might affect the conclusion of the jury is not only substantial but is fundamental. Erroneous admission or exclusion of competent evidence does not affect that right where it clearly appears that the weight of such evidence is too slight to influence the balance of the scales of justice, and that the conclusion of the jury must have been the same even had the judge ruled correctly, but the question of whether the accused has been prejudiced by erroneous ruling excluding competent evidence must not be confused with the " abstract question of guilt or innocence. * * * Error is substantial when we can say that it tended to influence the verdict." (*People* v. *Sobieskoda*, 235 N. Y. 411, 420.)

In *Makin* v. *Attorney-General* ([1894] App. Cas. 57) the Lord Chancellor, HERSCHELL, speaking for himself and the other Law Lords, forcibly stated the reasons why a statute similar to section 542 of the Code of Criminal Procedure may not be construed as conferring upon an appellate court power to disregard error in the admission or exclusion of evidence because the court concluded that other evidence established the guilt of the defendant.

" It is obvious that the construction contended for transfers from the jury to the Court the determination

of the question whether the evidence — that is to say, what the law regards as evidence — established the guilt of the accused. The result is that in a case where the accused has the right to have his guilt or innocence tried by a jury, the judgment passed upon him is made to depend not on the finding of the jury, but on the decision of the Court. The judges are in truth substituted for the jury, the verdict becomes theirs and theirs alone, and is arrived at upon a perusal of the evidence without any opportunity of seeing the demeanour of the witnesses and weighing the evidence with the assistance which this affords. * * *

" It need scarcely be said that there is ample scope for the operation of the proviso without applying it in the manner contended for.

" Their Lordships desire to guard themselves against being supposed to determine that the proviso may not be relied on in cases where it is impossible to suppose that the evidence improperly admitted can have had any influence on the verdict of the jury * * *."

For the purpose of showing the significance of the erroneous exclusion of evidence I must make brief reference to some parts of the testimony which, I think, have been passed over too lightly in Judge Hubbs' opinion. The complaining witness testified that at first he could not obtain from the defendants any statement of the reason why the union did not give him the contract he sought for the employment of union men. Then through one of his employees, Cohen, he was told that he could not have a contract unless he " paid the bums upstairs " $300. He testified that when he protested, one of the defendants said to him: " Well, we need the money for ourselves; we have to divide for ourselves," and that on a different occasion another defendant said: " Don't be a wise guy. We don't want you in the business. We don't like you. Everybody pays us. You are no exception." The complaining witness was corroborated by his employee, Cohen, but on cross-examination the credibility of both was seriously impaired.

On that point I shall not here attempt to analyse the testimony of these two witnesses. I content myself here with quoting a few comments from the admirably fair brief of the District Attorney. In beginning the summary of the testimony elicited on cross-examination, the brief states: " It is to be conceded at the outset that Rogoff developed a serious lack of memory as to his personal and business history."

The details of the cross-examination which follow in the brief show that Rogoff not only " developed a serious lack of memory," but that when questioned as to his failure to produce books and records which might show whether there was basis for the defendants' claim that the witness had not always paid his employees the amount of the union wages for which he exacted receipts, the witness gave an explanation of the loss of his books and records which, it subsequently appeared, was false.

Again it is said in the brief: " Despite their short-comings and their failing memories upon details of their personal history, which, after all, were collateral issues not entering into the merits of the accusation upon which the appellants were tried, Rogoff and Cohen were clear, positive and explicit upon the subject of the unlawful demands made upon Rogoff by the appellants in the course of their negotiations for the contract which it was in the appellants' power to furnish."

Perhaps a juror, seeking to discover where the truth lies, might find in the contrast between the " clear, positive and explicit " testimony of the witnesses upon their direct examination, and their " shortcomings " and " failing memories on cross-examination," an indication that their testimony was not entirely ingenuous. A conscientious jury might well hesitate to find that such testimony, without corroboration by a more reliable witness, was sufficient to outweigh the denial of the defendants.

It appeared in the testimony of the complaining witness, Rogoff, and also in the testimony of one of the

defendants, that Mr. Louis E. Greenberg, the attorney for Rogoff, had accompanied Rogoff to a meeting of the union and upon leaving the meeting had a conversation on the street with one of the defendants. Mr. Greenberg was then called in rebuttal. He testified without objection that he was admitted to practice in September, 1915, and had conducted an office in New York city; that Rogoff was his client and that he went with him to the rooms of the association at the time in question; that he asked Stolof in the presence of the other defendants the reason why his client, who had always maintained a union shop and paid union wages and was ready to accept union conditions, should not receive his contract. According to the testimony of Mr. Greenberg, Stolof replied that there was a grievance; that Rogoff had agreed with one Sickels, a business agent, that he would employ men from Sickels' local and had failed to do so. Rogoff denied that. Sickels was then brought into the room and a discussion took place upon that subject. Finally, Stolof said: " I will see that your client gets the agreement." Thereafter, the witness left the room and when on the street was accosted by the defendant Wellner who stated to him that $300 would have to be paid for the bums upstairs, or the gang. The witness testified also that nothing was said in the conversation upstairs that Rogoff would have to put up security or pay to make up the back pay of underpaid former employees who were union men. He testified that the only objection there discussed was that Rogoff had failed to take men from Sickels' local union and that that objection was obviated before the promise was made that Rogoff should receive his contract.

The witness was cross-examined in regard to injunction proceedings he had brought thereafter against the union. In those proceedings the union was represented by the firm of Markewich & Null who appeared on this trial as attorneys for the defendants. In the course of these

proceedings the witness, Mr. Greenberg, had some conferences with Mr. Samuel Null. The witness was asked: " Did you tell Mr. Samuel Null that at the conference at which you were present, between Rogoff and the defendants, there was a claim made by the officials of the union that your client failed to pay the union scale of wages?" The witness answered, " No." He was also asked: " Didn't you tell Mr. Null at that conference that at no time at that conference or outside of the conference that any of the defendants asked for money in the shape of graft?" to which the witness answered: " Mr. Markewich, you know that is not so." Thereafter, Mr. Null was called as a witness by the defendants and specific questions were asked for the purpose of contradicting and impeaching the witness Greenberg. Objections to those questions were sustained on the ground that the defendants had made Mr. Greenberg their own witness in the cross-examination and were bound by the answers to the questions. The defendants excepted to the ruling.

The error of the ruling is, as I have pointed out, conceded. The truth of testimony may be effectively challenged by proof that at other times the witness had made statements inconsistent with his testimony on the stand. Cross-examination of the witness as to such prior incompetent statements is necessary to lay the foundation for the introduction of proof that the inconsistent statements were made. Denial by the witness on cross-examination that an inconsistent statement had previously been made by him does not bind the cross-examiner, and exclusion of evidence thereafter offered to prove that such statement had, in fact, been made, constitutes in effect a denial of the right to challenge the truth of the testimony of the witness and to impeach its credibility. We have said that whether an error affects the substantial rights of the parties " necessarily depends upon the nature of the case and the narrowness of the issue. Good judgment rather than definite rules of law

must in such cases be our guide." (*People* v. *Purtell*, 243 N. Y. 273, 275.) There may be room for the exercise of judgment as to the materiality of an error which denies to an accused the right to produce evidence tending to impeach the credibility of a witness for the People where the testimony of the witness is itself negligible or where the evidence excluded would have affected the credibility of the witness in only negligible degree. There can be no room for the exercise of judgment where the evidence erroneously excluded might, if admitted, have justified rejection of testimony which otherwise would have decisive probative force.

That is the case here. Unimpeached, the testimony of Mr. Greenberg, an attorney of standing and experience, might reasonably induce a jury to find the defendants guilty though otherwise the jury might well have hesitated to find proof of guilt beyond a reasonable doubt in the testimony of the other witness who suffered from " failing memories " and " shortcomings." In this case, inference that in fact the jury did give heed to the testimony of Mr. Greenberg rests on more than conjecture. An hour and a half after the jury retired, it returned to the court with a request that the testimony of Mr. Greenberg be read to them again, and that they be permitted to inspect the minutes of the meeting at which Mr. Greenberg was present and " five kick-back affidavits " of former employees of Rogoff, the complaining witness, which the defendants had introduced to substantiate their claim that the $300 was exacted only because it was required to make good the " kick-backs " or difference between the union wages which the employees should have received, and the amount they did receive from Rogoff. Two hours thereafter the jury returned with a verdict of guilty.

I cannot find, under such circumstances, any ground which is even debatable for the conclusion that the error did not affect the substantial rights of the accused. Unsupported assertion cannot take the place of argument

and I have found no support in the record for such assertions as that no one " can read this record and have a doubt " that the defendants intended to keep the money for themselves as graft. It cannot possibly be disputed, and no person has attempted to argue otherwise, that the exclusion of the testimony of Mr. Null might have affected the credibility of the testimony of Mr. Greenberg. Assuming, arguendo, that the jury *might* have found the defendants guilty even without Mr. Greenberg's testimony, it remains true that his testimony was presented to the jury for its consideration; that the trial court specifically called the jury's attention to it; that the jury interrupted its deliberations by request to have the testimony read to it a second time, and that Greenberg's unimpeached testimony is well calculated to remove any doubts which otherwise the jury might well have had. Denial to the defendants, then, of opportunity to present evidence which indubitably would challenge the truth of the testimony and might affect its credibility is a denial of the right of fair trial. I cannot see how the opinion of the trial judge, or of appellate judges, as to the guilt of the defendants, can affect that. Arguments that the guilt of the defendants is sufficiently established by other evidence seem to me quite beside the mark.

It is unfortunate when the court is constrained to reverse a conviction for serious crime because of error in the admission or exclusion of evidence which, perhaps, might not have changed the result. Swift and certain punishment of wrongdoers is the most effective protection of society. It is even more unfortunate if the court for any reason feels itself constrained to affirm a conviction where the accused is denied a fair trial. Because I am profoundly convinced that these defendants have been denied a fair trial, I feel compelled to register, in this manner, my dissent against the decision of the court. Judgment should be reversed and a new trial ordered.

O'Brien, Loughran, Finch and Rippey, JJ., concur with Hubbs, J.; Crane, Ch. J., dissents in memorandum; Lehman, J., dissents in opinion.

Judgments affirmed.