THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* JACK N. RUBIN, Appellant.

Argued March 13, 1941; decided June 12, 1941.

*I. Maurice Wormser, George D. Zahm, Frederick J. Sullivan* and *William Roth* for appellant. The due administration of justice requires a reversal, to the end that defendant may have the fair and impartial trial which the law accords him. (*People* v. *Wolf*, 183 N. Y. 464; *People* v. *Becker*, 210 N. Y. 274; *People* v. *Montana*, 252 App. Div. 109; *People* v. *Velleman*, 247 App. Div. 172; *People* v. *Kilroe*, 201 App. Div. 549; *People* v. *Herman*, 255 App. Div. 314; *People* v. *Viscio*, 241 App. Div. 499; *People* v. *Purtell*, 243 N. Y. 273; *United States* v. *Minuse*, 114 Fed. Rep. [2d] 36; *People* v. *Stiglin*, 238 App. Div. 407.) The admission in evidence of the mail cards was error because no sufficient foundation was laid to warrant their introduction into evidence, and because the witness had no personal knowledge of the entries nor even any knowledge of the various handwritings, and because he was under no duty with regard to them. (*People* v. *Reese*, 258 N. Y. 89; *People* v. *Sugarman*, 248 N. Y. 255; *People* v. *Bromwich*, 200 N. Y. 385; *People* v. *Stilwell*, 244 N. Y. 196; *People* v. *Burgess*, 244 N. Y. 472; *People* v. *Semenza*, 221 App. Div. 79; *People* v. *Lebauer*, 243 N. Y. 589; *Johnson* v. *Lutz*, 253 N. Y. 124; *People* v. *Robinson*, 273 N. Y. 438; *Matter of Roge* v. *Valentine*, 280 N. Y. 268.)

*Thomas E. Dewey, District Attorney* (*Whitman Knapp* and *Stanley H. Fuld* of counsel), for respondent. The mail records were properly admitted. (*People* v. *Robinson*, 273 N. Y. 438; *People* v. *Reese*, 258 N. Y. 89; *People* v. *Bromwich*, 200 N. Y. 385; *United States* v. *Becker*, 62 Fed. Rep. [2d] 1007; *Robilio* v. *United States*, 291 Fed. Rep. 975; 263 U. S. 716; *State* v. *Wagner*, 311 Mo. 391; *Commonwealth* v. *Bardolph*, 123 Pa. Sup. 34; *State* v. *Cassill*, 70 Mont. 433; *State* v. *Larue*, 98 W. Va. 677; *People* v. *Bertlini*, 218 N. Y. 584; *Johnson* v. *Lutz*, 253 N. Y. 124; *People* v. *Kohlmeyer*, 284 N. Y. 366; *DeWitt* v. *United States*, 291 Fed. Rep. 995; 263 U. S. 714.)

LOUGHRAN, J. The defendant was convicted of the offense of criminally receiving stolen property. (Penal Law,

§ 1308.) On his appeal to the Appellate Division the conviction was affirmed in the professed exercise by the court of its duty to give judgment without regard to technical errors not affecting substantial rights. (Code Crim. Proc. § 542.) By permission of a judge of this court, the defendant has now brought the case here.

(1) As the District Attorney says in his brief, the chief witness against the defendant was one Morris Haberman, " a self-confessed and many times convicted thief." This witness, we are there told, " determined to speak the truth and testify on behalf of the People * * * only after having been convicted of robbery in the first degree, upon which he received the mandatory sentence of thirty to sixty years." Whether there had been a close fellowship between Haberman and the defendant was an important issue upon which the testimony of either flatly contradicted that of the other.

In its direct case the prosecution offered a writing or record that had been made at the Riker's Island Penitentiary at a time when Haberman was incarcerated in that institution. Across the top of this document runs the headline: " Name Haberman Morris No. 64039 Location 3." The space below is divided into three vertically ruled parallel columns. Above the left-hand column is the printed word " OUT." Above the right-hand column is the printed word " IN." The center column comprises a sequence of handwritten names and addresses. Among these the name and business address of the defendant are indicated in this manner: " Mr Jack Rubin 54 W 47 St N Y C " Alongside that phrase the symbol " 6/23 " appears in the left-hand column. The opposite counterpart of the right-hand column exhibits fourteen similar combinations of Arabic numerals.

This cryptic record was produced by a witness who was employed at the penitentiary as a clerk. The inscriptions thereon were characterized by him as " the entries of mail that comes in and goes out, either mail addressed to prisoners or mail sent out by prisoners." None of these

entries had been made by the witness. He testified, however, that a rule of the penitentiary required them to be made " at the time the mail comes in and at the time the mail goes out." (See Civ. Prac. Act, § 374-a.)

Over objection and exception by the defendant, the writing produced by the witness was without more received in evidence and thereupon the witness was allowed to testify that " as appears on that record " there were fourteen letters " that were sent to Haberman from Rubin, and one that was sent out to Rubin." In our judgment, this ruling should not be sustained.

The defendant denied that he had any communication with Haberman while Haberman was confined in the penitentiary at Riker's Island. There is no testimony as to how the phrase, " Mr Jack Rubin 54 W 47 St N Y C " came to be entered upon the record in question. In answer to the defendant's contention that an inadmissible hearsay use was made of the entries, the District Attorney proposes that they " contain nothing but the visual observations of employees of the penitentiary." (Cf. *Johnson* v. *Lutz*, 253 N. Y. 124, and *People* v. *Kohlmeyer*, 284 N. Y. 366.)

But even in that view the entries are at most an assertion that Haberman at the penitentiary got communications upon which the name and business address of the defendant appeared in some form at one place or another. Such an assertion was no evidence against the defendant except upon the convenient assumption that in the absence of inherent improbability, or credible proof to a contrary effect, the appearance of the same name at all times designates a given person. (See 2 Chamberlayne on The Law of Evidence, § 1187.) While an assumption of that kind is sometimes made in certain classes of civil cases (15 Am. & Eng. Ency. of Law [2d ed.], pp. 918–924; 9 Wigmore on Evidence [3d ed.], § 2529), we think the jury should not here have been permitted so to hypothesize for the purpose of the defendant's conviction of the crime which Haberman sought to fasten upon him. (See *People* v. *Reese*, 258 N. Y. 89, 96; *People* v. *Sellinger*, 265 N. Y. 149.)

(2) For reasons that were material to his defense, the defendant sought to show to the jury that on one occasion he had not been at his place of business in the early evening of a certain day. Harry Marrow occupied space there as a tenant of the defendant. As a witness for the defense, Marrow told the jury that over a period which included the occasion in question he was working in his quarters in the defendant's premises between six and eight o'clock every evening and that during that time he did not see any one there. As soon as the direct examination of this witness had been concluded, he was examined in this way: " The Court: What would you be doing when you were there between six and eight? The Witness: You see, I am a jeweller repairer, I have got a lot of work that is not finished * * *. By the Court: Q. You are working? A. Working, yes. * * * Q. Fixing jewelry? A. Yes, so I work until eight o'clock. Q. You are not a traffic policeman in there, are you; you are not directing traffic? * * * The Witness: No, it takes time."

A brother of the defendant was another witness for the defense. He gave testimony that at his behest a relative of his (who at the time was a Deputy Attorney-General) once sent to the defendant's place of business two detectives who were " not too kind " in their treatment there of persons who had attempted to extort money from the defendant. This testimony was material to the defense. At its conclusion, the trial judge put to the witness this query: " So you have an arrangement whereby anybody you don't like you have the Attorney General send policemen to beat them up; is that right? " No answer was made by the witness, though the objection of the defendant's counsel was overruled.

Against these matters, among others, the defendant now protests. It may be that some of his exceptions thereto are in themselves sufficient to warrant independent consideration. (Cf. *People* v. *Wood*, 126 N. Y. 249, 269; *People* v. *Cummins*, 209 N. Y. 283; *People* v. *Pindar*, 210 N. Y. 191.) But we need not decide that point, because in

no event would we feel safe in supposing that the error first discussed above was a technical one not affecting the substantial rights of the defendant.

The judgment of the Appellate Division and that of the Court of General Sessions of the County of New York should be reversed and a new trial ordered.

FINCH, J. (dissenting). The court is urged upon this appeal to reverse the conviction of the defendant upon two grounds, (1) that the trial court erred in the admission of certain official records from the Riker's Island Penitentiary, and (2) that questions asked by the trial justice of some of defendant's witnesses were prejudicial to the defendant. It is submitted that these grounds are not of sufficient substance to compel a reversal in the case at bar.

The defendant was convicted by a jury after a trial lasting nine days, of having criminally received stolen property (Penal Law, § 1308) valued at upwards of $225,000 over a period of three years. The record amply sustains the unanimous finding of the jury that this defendant is guilty of the crimes for which he stands convicted and the defendant does not suggest upon this appeal that the verdict as to any one of the five counts for which he was convicted is insufficiently supported by legal proof.

In spite of the evidence of guilt in this record, the finding of the jury and the unanimous affirmance of the conviction by the Appellate Division, we are asked to set aside this conviction. Since no question of fact survives in this court, such reversal by this court must be on the ground that the defendant's rights were affected substantially by the alleged errors.

The official records from Riker's Island Penitentiary were admitted in evidence for the purpose of showing that there had been a close relationship between the defendant and the witness Haberman. The only objection to such admission was that a sufficient foundation had not been laid pursuant to the provisions of section 374-a of the Civil Practice Act. This objection was overruled by the trial

court and a majority of the court has found no error in the admission of these records upon this ground.

Upon this appeal the defendant contends that an inadmissible hearsay use was made of these records since an official from Riker's Island Penitentiary was allowed to testify from them that fourteen letters were sent to Haberman from Rubin and one from Haberman to Rubin for the period during which Haberman was incarcerated in the penitentiary. (Cf. *Johnson* v. *Lutz*, 253 N. Y. 124, 127, and *People* v. *Kohlmeyer*, 284 N. Y. 366.) On the other hand, the People urge that these records " contain nothing but the visual observations of employees of the penitentiary." In this view of the entries they are at most an assertion that Haberman received communications upon which the name and address of the defendant appeared in some form.

Assuming that the admission of these records was error, we do not see how such error can be substantial in this case. The *factual* accuracy of the records themselves has never been challenged, the defendant having contented himself with his own denial that he communicated with Haberman while he was in prison. On the question of whether or not any letters from defendant were received by Haberman, both Haberman and his wife testified that Haberman received such letters while he was in prison. But more important on the general question of the association between defendant and Haberman, is that defendant did not deny such association and specifically admitted that he and Haberman were " kids together;" that they used to " shoot crap in the street;" that he had " spent my life with him * * * just like any other boy;" that the defendant had sought out the company of Haberman and his wife; that he had gone out with Mrs. Haberman while her husband was in the Tombs; and that he had advanced money for Haberman's legal fees and had helped Haberman's wife arrange bail for him. In view of such overwhelming direct evidence proving the same hypothesis, it is submitted that the disputed admission of the official records from the penitentiary becomes a mere technical error which does not affect the substantial rights of the parties.

By the enactment of section 542 of the Code of Criminal Procedure, the Legislature has expressly commanded that " after hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." It is submitted that the case at bar is precisely the type of case which the Legislature must have had in mind when it enacted that section. Here there is present a conviction supported by the overwhelming weight of evidence, and in which it is alleged that the 952-page record contains an error upon the admission of evidence to prove a contention which was amply proved by other evidence contained in the record. In such a case we think that section 542 should in any event be applied and the conviction upheld.

The contention that the defendant was not accorded a fair trial would seem to be an afterthought raised by the defendant for purposes of appeal since only once during a trial lasting nearly two weeks did defendant's experienced trial counsel move that a juror be withdrawn and then such motion was withdrawn immediately. Nor was it suggested in defendant's motion to set aside the verdict and in arrest of judgment that the defendant's rights had been prejudiced by any improper conduct on the part of the trial justice. As was pointed out in the case of *People* v. *Cummins* (209 N. Y. 283, 292), " if the trial had been unfair, that fact would have impressed itself upon the mind of the counsel for the defendant, who participated in it from beginning to end; * * *." Thus here where the defendant's experienced trial counsel has not considered the errors committed by the trial justice sufficiently material to warrant a motion to withdraw a juror, this error of the trial justice would not appear to have substantially prejudiced defendant's rights.

Counsel for the defense urges that essentially the case presented by the District Attorney rests upon the testimony of professional thieves and that the chief witness against the defendant was one Morris Haberman who admitted to numerous crimes and who at the time of the trial was under

sentence of from thirty to sixty years for the crime of robbery in the first degree. It is fundamental that such facts are relevant only as to the weight to be given to the testimony of such witnesses (3 Wigmore on Evidence [3d ed.], § 876) and that before the jury such facts merely present a question of credibility for determination by the jury. In a prosecution for receiving stolen property, as was demonstrated by the case at bar, the witnesses who are best qualified to testify are those who have delivered such property to the defendant. The Legislature has recognized this fact and expressly directed that such witnesses shall not be deemed accomplices. (Penal Law, § 1308-a.)

It follows that the conviction in the case at bar should be affirmed.

LEHMAN, Ch. J., RIPPEY and LEWIS, JJ., concur with LOUGHRAN, J.; FINCH, J., dissents in opinion in which CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.